# Bank of Pittsburgh *against* Whitehead, Sproul &· Co.

Knowledge of a material fact, imparted by a director of a bank to the board, at a regular meeting, is notice to the bank.

Where there is a spark of evidence, a question of fact must be submitted to the jury as the legitimate triers of it.

ERROR to the district court of *Allegheny* county.

Bank of Pittsburgh against Thomas T. Whitehead, Christian Ihmsen, Charles Ihmsen, and Robert Sproul, trading in the name of Whitehead, Sproul & Co. This was an action on the case in assumpsit, founded upon two accepted drafts drawn by Whitehead, Sproul & Co., on R. S. Swearingen & Co., in favour of R. C. Grier, for 266 dollars and 80 cents, and 647 dollars and 33 cents, dated the 15th of January and 25th March 1839, at six and four months, dis-

. X.—2 I*

counted by the bank, and protested for non-payment, of which the defendants had regular notice. The plaintiffs gave in evidence the notes and protest, and the following paper, given to the bank at its date by the defendants:

. " The parties trading under the firm of Whitehead, Sproul & Co., consist of the undersigned, each partner, below named, signing for the firm, has authority to bind the firm by drawing and endorsing bills of exchange, checks or promissory notes, and also by accepting bills of exchange in the name of the firm. .

Dated at Pittsburg this 20th day of November, 1838.

THOS. T. WHITEHEAD.<br>
C. IHMSEN.

To the Cashier of the       CHARLES IHMSEN.
Bank of Pittsburg.       ROBERT SPROUL."

The defence was, that Christian Ihmsen was not a member of the firm of Whitehead, Sproul & Co., when the bills were drawn, and of which the bank had notice, of which the defendants gave the following evidence:—

John Snyder, sworn.—The bill for 266 dollars and 80 cents was discounted by the bank on the 15th of March 1839, and that for 647 dollars and 33 cents, on the 26th of March 1839. At this time Benjamin Darlington and John Taylor, were the exchange committee of the bank. I do not know whether the committee acted upon those bills; if they did not, they were discounted by the president and myself, or one of us. The daily Pittsburg Gazette is, and was taken, at the time the bills were discounted at the bank.

January 1, 1839, articles of agreement between Christian Ihmsen of the one part, and Thomas T. Whitehead and Henry Sproul, by which Ihmsen sells his interest in the firm of Whitehead, Sproul & Co., to Whitehead & Sproul. ·

John Bissell, sworn.—Was director of the bank for four years previous to last November. Whitehead, Sproul & Co. applied to the bank sometime in January, February or March, for a loan of 3000 dollars. My understanding at the time was, that Christian Ihmsen was not liable for the loan in case the bank had given it. The reliance was on judge Grier, the endorser. This was talked over at the board. John D. Davis mentioned at the time, that Christian Ihmsen was not in the firm of Whitehead, Sproul & Co.; after that I did not think of holding Christian Ihmsen; do not know what the other directors thought.

John Snyder, again.—On the offering day of the 30th of January 1839, I find Whitehead, Sproul & Co., endorsed by R. C. Grier, at ninety days, for 3000 dollars.

John Bissell, again.—I take the Pittsburg Gazette and Advocate at the mill; I think it was at the bank I first read that Christian Ihmsen was out of the firm. I have been on some of the committees of directors. Christian Ihmsen was not considered at the time, at the bank, one of the firm of Whitehead, Sproul & Co., from

the fact that this was mentioned at the board. I presume Mr Snyder knew it. Never saw the specification.

R. H. Douthet, sworn.—Was teller of the bank in January, February and March, 1839; recollect seeing an advertisement in the paper of withdrawal of Christian Ihmsen, from the firm of Whitehead, Sproul & Co. I cannot say when I saw it; paid no attention to dates; saw it in one or both the papers taken at the bank. I never heard any thing said in the bank about Christian Ihmsen's being a partner.

January 17, 1839, advertisement in the Pittsburg Gazette:—
" Notice.—The undersigned having this day sold his entire interest in the Pennsylvania Flint and Black Bottle Works to Thomas T. Whitehead and Henry Sproul & Co., beg leave to recommend to the customers of said concern a continuance of their patronage to his successors Messrs. Whitehead, Sproul & Co., who will continue the business of the late firm.

" January 1, 1839.　　　　　　　C. Ihmsen."

July 22, 1839, Daily Advocate contains the same advertisement.

William M. Knight, sworn.—I was a director; took the Gazette and Advocate. My recollection is, that I saw the advertisement of C. Ihmsen, but at what time I saw it, I cannot say. It might have been the first or the last copy of the advertisement. I should not of course have considered C. Ihmsen a partner of the firm after he published a dissolution. Do not recollect of any talk at the board about Christian Ihmsen's being a partner. I was member of the board during part of Bissell's time.

John D. Davis.—I was a director. It is probable I may have seen these advertisements, but cannot now say whether I did or not; presume I did; had no transactions with the house at the time. On 1st of April last, Whitehead, Sproul & Co., purchased of me 150 pigs of lead, gave me their note endorsed by Christian Ihmsen. I did not then consider C. Ihmsen as a partner. O. O. Grigg called on me at one time and solicited me to become the purchaser of glassware from C. Ihmsen; said C. Ihmsen had sold out to Whitehead, Sproul & Co.; this was in the early part of the present year."

O. O. Gregg, sworn.—Latter end of January 1839, Christian Ihmsen started down the river; requested me to call on John D. Davis, to state that he had sold out his interest in the concerns of Whitehead, Ihmsen & Co., and that he was to take flint glass from the persons and black bottles, and would be able to dispose of such articles on favourable terms, and requested me to solicit orders from merchants. I called on John D. Davis between the 22d and 26th of January 1839, and mentioned these things to Davis.

Benjamin Darlington, sworn.—" I was director of the bank; recollect seeing the advertisements last spring or winter. I was a good deal on the exchange committee, and recollect Whitehead, Sproul & Co's paper coming before us; some time it was done, and sometimes not. I cannot say, that I at any time thought of that

advertisement during these transactions. Had I given the matter a thought, I would not have considered C. Ihmsen a partner after I had seen his advertisement. Cannot say whether I saw the advertisement when it first came out. Whitehead, Sproul & Co. were in the habit of having paper discounted by the bank.

W. W. Daily, sworn.—Was clerk in the Bank of Pittsburg; Advocate and Gazette taken in bank. I saw the advertisement. Recollect no conversation among the officers as to the withdrawal of Ihmsen.

Plaintiffs then again called John Snyder.—To the best of my knowledge the first information I had of Mr. C. Ihmsen having withdrawn, was by showing the advertisement himself, after the suit had been brought against him. I consider the name of judge Grier would make the bill perfectly good without the name of Christian Ihmsen on it. When a specification is left at the bank, we are usually governed by it. There was no new specification left at the bank. I may have seen the advertisement before C. Ihmsen.

Whereupon the plaintiffs' counsel requested the court to instruct the jury as follows:—

1. That the defendants having filed with the bank a written specification, that they constituted the firm of Whitehead, Sproul & Co. and that each member had authority to draw bills, &c. they continued bound by these stipulations, until they countermanded the authority, or furnished the bank positive direct notice of their disavowal of it.

2. That a publication in a newspaper of the withdrawal of one of the partners, even if it come to the knowledge of the bank directors individually, will not relieve such partner of his responsibility for the bills of exchange on which this suit is brought.

3. That as none of the officers or directors of the bank, who discounted the bills on which this suit was brought, had any knowledge brought home to them of the dissolution of the firm of Whitehead, Sproul & Co., or the publication of Christian Ihmsen, that the informal notice of such dissolution to the other directors, would not prevent the recovery of plaintiffs in this case.

4. That the publication in a newspaper of the dissolution of the firm, more especially the publication by one of four partners, that he had withdrawn, even if the paper in which it is contained is taken at the bank is not evidence of such dissolution, sufficient to affect the plaintiffs, more especially as in this case the firm of Whitehead, Sproul & Co. have had previous dealings with the bank.

5. That some of the directors had seen the advertisement of Christian Ihmsen, will not bring the knowledge of the dissolution to the bank, so as to affect them with knowledge of the dissolution of the partnership.

To these several points the court answered.

*Dallas*, president.—"To the first, the defendants having filed with

[Bank of Pittsburgh v. Whitehead, Sproul & Co.]

the bank a written specification that they constituted the firm of Whitehead, Sproul & Co., and that each member had authority to draw bills, &c., they continued bound by those stipulations, until they countermanded the authority, or until the bank received positive and actual notice of the disavowal of the authority, by dissolution of the firm or otherwise.

" To the second, the publication in a newspaper or newspapers, taken by the bank, of the withdrawal of one of the partners, is not proof of such actual notice, without any thing further. If such publication come to the knowledge, previously, of the directors of the bank individually, by their seeing and reading it, the jury are at liberty, I think, to draw such an inference, from a knowledge thus obtained, as will relieve the partner who has thus withdrawn from his responsibility, to the plaintiffs in the present suit.

" To the third, although there may be no testimony showing that the officers or directors of the bank, composing the exchange committee, and discounted the bills upon which this suit was brought, had any knowledge brought home to them whilst they were exercising this special duty under authority from the directors, yet the jury are authorized, from the testimony in the cause, to infer actual knowledge by the plaintiffs, in consequence of the acts and declaration of other directors, previously done and made, although these other directors may not have been of those composing the exchange committee.

" Mr Davis might have given (if indeed he did not do so) to all the board present in January 1839, the same information which Mr Bissell testifies was given to him as a member of the board.

" That certain members of the board having a special duty to perform, as an exchange committee, were either indifferent to such information, owing to the strength of the other names upon the paper, or did not choose or forgot to act upon, ought not to absolve the bank from the legal effect of such information.

" It certainly would not have availed the plaintiffs to show that formal written notice, received by the president, cashier, and all the other directors, while composing a board, was not received by the members of a committee from that board, because absent from the board when the notice was given.

" The fourth point has been already specially noticed. There were previous dealings; actual notice must therefore be shown.

" From the fact (if the jury should so believe) that some of the directors had previously seen and read the advertisement of Christian Ihmsen, of January 17, 1839, the jury are authorized in drawing the inference of actual knowledge by the bank, of which they were the directors, of the dissolution of the partnership.

" The jury will therefore see that the question of knowledge is with them to be solved by the testimony. If they do not believe that notice has been brought home to the plaintiffs of the dissolution, then C. Ihmsen is responsible, and the plaintiffs would be entitled

to a verdict; if, on the other hand, the testimony has satisfied their minds of actual knowledge possessed by the plaintiffs of such dissolution, prior to discounting these bills, then Christian Ihmsen would be discharged from all responsibility to the plaintiffs, and a verdict must be rendered for the defendants."

To which charge the plaintiffs excepted.

*Dunlop*, for plaintiff in error, cited 6 *Johns.* 148; 6 *Cowan* 704; 17 *Wend.* 527; 7 *Serg. & Rawle* 503; 4 *Whart.* 484; 5 *Whart.* 530; 18 *Com. Law Rep.* 270; 2 *Com. Law Rep.* 349; 1 *Stark.* 186; 12 *Com. Law Rep.* 48; 2 *Stark.* 290; 3 *Com. Law Rep.* 351; 8 *Watts* 18.

*Forward*, for defendant in error, cited 3 *Kent* 66; 2 *M'Cord* 379; 1 *M'Cord* 388; 17 *Wend.* 527.

The opinion of the court was delivered by

GIBSON, C. J.—Where there is a spark of evidence, the question of fact must be submitted to the jury as the legitimate triers of it. In this instance the evidence would be ample to affect a natural person with notice of the dissolution; but the party to be affected is a corporation. Notice to an individual corporator, if he be not constituted by the charter or by-laws an organ of communication betwixt the corporation and those who deal with it, is not notice to it, because any presumption that he delivered what he had received to the body, would be rebutted by the fact that it was not his duty to do so. He might choose to leave that business with the person officially charged with it, and thus leave the corporation in possession of the rights and advantages which arose from imputed ignorance. But notice to the government, or head, is necessarily notice to the body; because it is to be approached by strangers only through the medium of its government, or else some organ or branch of it, specially deputed to represent it; and the government, or its deputy, is consequently the channel through which it is to receive formal or official notice. Now the government of a bank resides in a select body, called president and directors; and no matter how the duties of its individual members may be parcelled out among themselves, it is still the president and directors in the aggregate with whom strangers have to do, and by whom all corporate acts are to be performed. Where indeed the charter, a by-law, or inveterate custom has authorized the executive officers of a bank to act for it, they may bind it by their reception of notice as well as by any other act within the scope of their power; but notice directly to the principal, is necessarily as effective as if it were given to the agent, in order that it might be delivered by him to the principal. Publication of dissolution in a newspaper, taken by the officers, and paid for by the bank, may not be constructive notice to a bank which had, as in this instance, previously dealt with the firm; but when

[Bank of Pittsburgh v. Whitehead, Sproul & Co.]

the fact of dissolution, gleaned from that, or any other source, is stated before the board by a member of it, and made a subject of conversation during the very transaction, it is impossible to doubt that the bank is to be affected, because knowledge of the fact material to be known is a part of the *res gestæ.* There can not be a question, therefore, that knowledge imparted to the board, as was done here, by a director at a regular meeting, is notice to the bank. As to the absence of the exchange committee, whose function it was to act on the basis of the information, it is enough that it was the business of the board, and not of the party treating with it, to give its subordinate the necessary instruction. The power which appoints a committee is the proper one to direct it, and inform it of whatever is necessary to be known. The committee, in this instance, was the peculiar organ of the board; and even if it had been competent to receive a formal notice, still notice communicated to the principal must be deemed equally operative. There was, therefore, evidence of actual notice to be left to the jury.

Judgment affirmed.