`[L. A. No. 910.   Department One. — October 12, 1901.]

## JAMES A. BLOOD, Respondent, v. LA SERENA LAND AND WATER COMPANY, Appellant.

FINDINGS—DECISION BY DIFFERENT JUDGE—STIPULATION — REVIEW UPON APPEAL — PRESUMPTIONS — SUFFICIENCY OF EVIDENCE. — A judge, other than the trial judge, who passes upon the evidence stands in the shoes of the trial judge; and the fact that the judge who, by stipulation of the parties, decided the cause and made the findings was not the one before whom the witnesses appeared at the trial cannot change the presumptions, upon appeal, in favor of the decision of the trial court, nor affect the rule that this court will not disturb a finding, if the evidence relating thereto is substantially conflicting, nor unless there is either an entire absence of evidence to support it, or so slight evidence as to show an abuse of discretion.

MORTGAGE OF CORPORATION — FORECLOSURE — ABSENCE OF RESOLUTION OF AUTHORITY — ESTOPPEL. — A corporation defendant, against whom a mortgage is sought to be foreclosed, is estopped to deny its validity, notwithstanding the absence of a proper resolution of authority therefor, where it is made to appear that the plaintiff conveyed land thereto, and took the mortgage in part payment thereof, believing that the corporation had legally executed it, and that the latter retained the possession and benefits of the land and sold part thereof, and recognized its indebtedness therefor, which was acquiesced in, and not disputed by the directors or any stockholders until the mortgage was foreclosed, five years after the purchase.

ID. — AGENCY — EMPLOYMENT OF BROKER BY PLAINTIFF — SUBSCRIPTIONS TO STOCK — GOOD FAITH — TRUST — ESTOPPEL NOT AFFECTED. — The employment, by the plaintiff, of a real estate broker to negotiate a sale of the land, before its conveyance to the corporation, which employment was known to the directors and promoters of the corporation, but was unknown to some of the stockholders thereof, and a subscription by such broker to the stock of the corporation, and his becoming secretary thereof, do not show him to be a trustee of the corporation, nor affect the estoppel of the corporation to deny its mortgage to the plaintiff, where it appears that all of the subscriptions to stock were in good faith, that the plaintiff was not a director, promoter, or trustee of the corporation, and that none of the stockholders were deceived or misled by any misrepresentations or concealment by plaintiff or his agent, nor by any of the subscriptions to the stock.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial.   W. S. Day, Judge.

The facts are stated in the opinion, and in the decision of the court upon the former appeal, reported in 113 Cal. 221–238.

Thomas McNulta, and J. S. Chapman, for Appellant.

R. B. Canfield, and J. W. Taggart, for Respondent.

ᐧ CHIPMAN, C.—Foreclosure of mortgage, and plaintiff had judgment. ᐧ The action was dismissed as to all the defendants except the land and water company, and it appeals from the judgment and from the order denying its motion for new trial. The case was here once before, and it was then held that the note and mortgage were not originally the act of the corporation. On the remaining issue of ratification, it was held that the subsequent conduct of defendant did not constitute ratification, within the meaning of that term as used in the Civil Code, and that if such conduct had any effect, it was by way of estoppel. (*Blood* v. *La Serena L. & W. Co.*, 113 Cal. 221.) Referring to the situation of the pleadings, the court said: "He (plaintiff) successfully makes out a *prima facie* case, and may, without pleading it, use the evidence in estoppel to prevent the corporation from maintaining what, as against its acts, would be an unjust and unwarranted defense." There being no findings on the question of estoppel, a new trial was ordered, the court saying: "Upon such trial, it may be determined what position Blood, Jr., occupied in relation to the corporation, — whether he was merely a mouthpiece to deliver messages, or whether he was chargeable with the high good faith exacted of all who stand in a relation of trust. It may also be determined whether or not the corporation knew, or was chargeable with knowledge, of the interest of Blood, Jr., and of the fact that he was to receive a commission from the vendor. In short, there may be explicitly set forth the acts and conduct of the corporation which may be claimed to estop it from contesting the validity of the note and mortgage. Thereafter, should an appeal be taken to this court, the question will be properly under review." An amended answer alleged facts bearing upon the points suggested above by this court, and some others, on which and on the issue of the estoppel the trial court found adversely to defendant. These matters of defense, and the facts bearing on the issue of estoppel, will be understood from the findings. For a general history of the case, reference is made to the opinion in the

former appeal.  The cause was retried on the evidence taken
at the first trial, and on some additional evidence submitted by
the respective parties.  The court found the following facts:
That, prior to the formation of the corporation, plaintiff au-
thorized his nephew, Blood, Jr., who was then a real estate
agent or broker, to negotiate a sale of the lands for one hun-
dred and five thousand dollars, on certain terms, and it was
agreed between them that the latter should be paid by the
former a commission of five thousand dollars for his services
as agent or broker in the event of his effecting such sale; that
Blood, Jr., proceeded to negotiate with certain persons for the
sale to them of said land, and, for the purpose of effecting the
purchase, the said persons organized the defendant corporation
and became subscribers to its stock, and proposed to plaintiff,
through Blood, Jr., to purchase on certain terms (somewhat
modifying plaintiff's original terms), which proposal plaintiff
accepted; that at the time of the formation of the corporation,
and prior to the conveyance to it of said land, both plaintiff
and Blood, Jr., became subscribers to the stock of the corpo-
ration with knowledge of the other subscribers; that there was
no agreement between plaintiff and Blood, Jr., relating to said
sale, other than as above stated, and that no agreement between
them was secret, or concealed from the subscribers to said
stock, or from any of them, or from the corporation, and that
Blood, Jr., made no representations as to the terms of the sale
or as to his relations to the corporation or its corporators or
stockholders, otherwise than in accordance with the facts above
stated; that he was not authorized to act, and did not act, as
agent of the subscribers, or on behalf of said corporation, in
connection with the sale, otherwise than in communicating to
plaintiff the aforesaid modification of the terms of sale, and in
receiving plaintiff's assent thereto, and in the payment over to
plaintiff of a portion of the purchase-money for said land
agreed to be paid by said subscribers; that none of the sub-
scribers to the stock were pretended purchasers thereof, or were
otherwise than *bona fide* subscribers in their own right, and
none of said subscribers became such under any agreement
that their shares, or the shares of any of them, were to be
transferred to plaintiff, or that they, or any of them, were to
be held harmless by plaintiff on account of any payments
made by them for said stock; that none of the subscribers were
deceived or misled by the subscriptions of any other sub-

scribers, or by any representations of plaintiff or Blood, Jr.; that neither plaintiff nor said Blood, Jr., represented said ranch to be worth one hundred and five thousand dollars, or any other sum; that at the time of the purchase there was payable from the subscribers to stock one half the par value thereof by them subscribed, respectively, to be applied to the cash payment on the land, which they directed to be paid to plaintiff; that the amount payable on the five thousand dollars subscribed by Blood, Jr., was paid, with the commission payable from plaintiff to him for effecting the sale as aforesaid; that the corporation at all times had notice of the agency of Blood, Jr., as the agent of plaintiff for the sale of said land, and of the terms on which said sale was authorized by plaintiff, and of the commission to be paid his said agent.

Finding 10 is as follows: "That from the time of the execution and delivery of the deed of plaintiff to the defendant corporation, as aforesaid, the said corporation has held the title to the lands thereby conveyed to it, except in so far as it has divested itself of title to the portions of said lands sold by it; that immediately upon receiving the conveyance aforesaid, the said corporation entered into possession of the lands and premises so conveyed, caused the said land to be surveyed and subdivided into blocks and lots for convenience of sale, and proceeded to develop a spring on said land by running a tunnel under it. In the month of September, 1888, the said corporation sold and conveyed to plaintiff a parcel of said land, comprising 8¼ acres, for the price of $3,750. In February, 1890, another parcel of said land was sold and conveyed by said corporation to Emily F. Thompson. That the said lands, while in the possession of said corporation, were managed and cultivated by and under the direction of said corporation, and by its tenant, to whom a portion of said land was leased by said corporation, and the rents and proceeds thereof were received by said corporation and applied to its own use, and that a portion of the fruit trees growing on said land at the time of the sale by plaintiff were cut down and removed therefrom by the defendant corporation, and the land formerly occupied by them used by the corporation for other purposes; that, from time to time, after the execution and delivery of the note and mortgage as aforesaid, the said corporation made payments to plaintiff on account of the interest and principal of said note; that the defendant corporation continued in the possession of said land,

excepting the portions thereof sold as aforesaid to plaintiff and to Emily F. Thompson, until the month of October, 1889, when the possession of the unsold portion of said lands was delivered by said corporation to plaintiff under an agreement between said corporation and plaintiff that the plaintiff should accept the rents, issues, and profits of said lands in satisfaction of the interest to accrue on said note, and that plaintiff has ever since continued in the possession of the lands so delivered to him under said agreement; and that the defendant, La Serena Land and Water Company, is estopped from denying the due execution and delivery of said note and mortgage."

The court also found, that on May 26, 1892, defendant passed a resolution to reconvey all the unsold land, in pursuance of which a deed was executed in due form by defendant, but said deed has not been delivered to plaintiff; that defendant is willing to deliver the same upon receiving from him the amounts actually received from the persons described in the amended answer as the *bona fide* purchasers of the stock of said corporation.

The elaborate review of the evidence in the briefs of counsel for appellant seems to be presented on the theory, and indeed defendant contends, that this court may examine the evidence and determine the controversy uncontrolled by the rule as to conflict, and regardless of the usual presumptions in favor of the decision, for the reason that the judge who, by stipulation of the parties, decided the case and made findings was not the judge before whom the witnesses appeared.

It was held in *Churchill* v. *Flournoy*, 127 Cal. 355, that on the hearing of a motion for a new trial by a judge who had not tried the case, he stands in the shoes of the former judge, and has the same power, and is charged with the same duty, as if the motion had come before the former judge. The same rule must apply, and for the same reasons, where a judge decides the case on the evidence submitted to him, though taken before another judge. And we think the ordinary presumption in favor of the decision of the trial court prevails, just the same as where the trial judge has the witnesses before him. The rule as to when this court will interfere to set aside a finding of fact in the case of an alleged conflict in the evidence is, that it may rightfully set aside a finding for want of evidence only where there is no evidence to support it, or where the supporting evidence is so slight as to show abuse of discretion.  (*Frace*

v. *Brown*, 117 Cal. 324, and cases cited; *Carter* v. *Lothian*, 133 Cal. .451.)

Appellant contends,—1. That Blood, Jr., was a trustee in .the highest sense of the term, and bound to the utmost good faith towards the parties with whom he claimed to be acting; and 2. That defendant is not estopped to deny the execution of the note and mortgage.

There was evidence that plaintiff conveyed the land to defendant corporation, and that the mortgage and note in suit were executed in due form on behalf of the corporation, by its president and secretary, and by affixing the seal in use by the corporation, and that the papers were delivered to plaintiff. This is not disputed, but it is disputed that these officers were duly authorized to execute and deliver the documents, and this question has already been disposed of in the former appeal adversely to plaintiff. Assuming that the defendant is liable, the amount found to be due is supported by the evidence, as is also the fact that plaintiff is the owner and holder of the note and mortgage.

Laying aside for the moment the question as to whether Blood, Jr., was a trustee, as claimed by appellant, there is evidence to support finding 10, and we think the facts warrant the finding that defendant is estopped to deny the execution and delivery of the mortgage. These facts do not present the case of misrepresentation by the party to the action who would be benefited by the original transaction, made as an inducement to enter into the contract. Usually, an estoppel *in pais* involves such a situation. Here, however, the facts recited occurred after the deed was made to the corporation, and appellant contends that as plaintiff did not change his position on account of these acts, they could not constitute an estoppel. Briefly, the case is this: Plaintiff transferred the title of the land to the corporation, and took its mortgage in part payment, in the belief that the corporation had proceeded legally in executing the mortgage; the corporation neglected to pass the resolution of authority, but this was its, and not his, neglect; he surrendered possession to the corporation; it sold the crops, sold some of the land, cut down orchard trees, subdivided the tract into villa sites, collected rents, paid certain of the proceeds of sale of land and of crops and of rentals in discharge of its obligations; it retained possession nearly two years, when, in April, 1889, not being able to meet its obligations originally

entered into, it passed a resolution surrendering possession to plaintiff in lieu of paying interest, and asking for an extension of time to pay the principal, thus impliedly admitting its unpaid indebtedness, and it never disputed its liability until this suit was brought, which was five years after the purchase. These facts were all well known to and acquiesced in by the directors of the corporation, and the transaction generally was known to all the stockholders, who in fact formed the corporation for the purpose of making the purchase, and well knew that a mortgage was to be given to secure the unpaid balance of the purchase price.   Upon every principle, there is an estoppel established.   (*Main* v. *Casserly*, 67 Cal. 127.)   It was there said: "Assuming that the contract of purchase was *ultra vires*, the law does not allow a corporation to retain the benefits which it has received from the contract, and escape liability upon it." (See also *Love* v. *Sierra Nevada L., W., & M. Co.*, 32 Cal. 639;[1] *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67.)

We do not understand respondent to controvert this doctrine seriously.   But it is said that Blood, Jr., was a trustee of the corporation, and received a commission from plaintiff for the sale of the property, and that the persons for whom he acted were ignorant of that fact, and therefore plaintiff is in no position to plead estoppel or enforce the mortgage.   The finding of the court is, that the corporation had notice of the fact that Blood, Jr., was acting as agent for plaintiff, and of the terms of the sale, and of the commissions to be paid his agent.

There is evidence tending to show the following facts: That Blood, Jr., was in the furniture business in 1887.   He sold out his business, July 14th of that year, and engaged in the business of real estate agent or broker.   Blood, Sen., had been talking of selling his ranch, and at the request of Blood, Jr., he placed it in the hands of the latter for sale.   The ranch comprised 350 acres, fronting on the ocean, near Santa Barbara, and was thought to be available for villa sites.   The price placed upon the property was three hundred dollars per acre, or one hundred and five thousand dollars; terms of sale, one half cash and one half in one year, secured by mortgage, and the agent was to receive five thousand dollars as commissions for making the sale.   He spoke to several parties about purchasing, but finally found that the only way to effect a sale was by an association

[1] 91 Am. Dec. 602.

of persons to buy it. He so informed his uncle, Blood, Sen., and that he " did not think it possible to find one person that wanted to put up so much money, and pay so much cash down." He laid the proposed investment before several persons, who agreed to make the purchase, and to form a corporation to take the title and manage and sell the property as a speculation. One of the principal parties in organizing the corporation was James L. Barker, who became a subscriber to the stock, and was made president and a director of the corporation. He was in the real estate business, and was also admitted to practice as an attorney at law, and prepared the articles of incorporation. His mother became a subscriber, through him as her agent for the management of her business. Barker was active in bringing the organization to a conclusion, and was looked to as the responsible head and manager of the corporation, and it was because he and his associate directors failed to pass the requisite resolution of authority to make the note and mortgage in question that these instruments were held to be unauthorized.

It turned out that there were not enough subscribers to the stock to make the first payment of one half the purchase price by each subscriber paying one half of the par value fixed for the shares, and plaintiff agreed to take a certain part of the stock. Blood, Jr., also subscribed for twenty shares, and became secretary of the corporation. The articles called for 300 shares, of the par value of $500 each, and 210 shares were originally agreed to be taken. This made the required one hundred and five thousand dollars, one half of which would provide the first payment. The subscribers had a meeting before the corporation was fully organized, and voted a payment of one half the par value of the shares by each subscriber, and Blood, Jr., was authorized to pay over the money to plaintiff. He paid to plaintiff what he had received from the subscribers, and his proportion was paid by his commissions; other subscribers paid directly to plaintiff; the subscription by plaintiff, which appears to have been in the name of his wife, was probably taken in account as going to make up the required first payment. The evidence as to the amount of the cash payment is not clear. As to this payment, it is not very material, since plaintiff makes no claim for any deficit in respect of it, and since he deeded the property to the corporation and took the mortgage to secure the unpaid balance of one half. The articles

of incorporation, when filed, gave the names only of persons who had subscribed for 130 shares, and among the subscribers are plaintiff for ten shares and Blood, Jr., for ten shares. The stock-book, however, showed that on September 12, 1887, there were 223 shares issued, of which twenty shares were issued to Blood, Jr., and twenty shares to the wife of Blood, Sen. The articles of incorporation were filed August 20, 1887; they were signed by Barker, G. L. Hoffman, Blood, Jr., D. B. Lee, and Mary Ashley, who were named as directors in the articles, and served as such. The deed and mortgage were not delivered until about September 13, 1887.

There is evidence that plaintiff told Barker and Mrs. Ashley, two of the trustees, that he had promised his nephew five thousand dollars if he made a sale of the land. Plaintiff testified that he remembered telling these two persons, and he testified that he told all he had any conversation with concerning the sale. There is evidence that three of the five directors of the corporation knew that Blood, Jr., was to receive a commission. Director Hoffman was absent from the state at the time the mortgage was made, but returned shortly after and acted as a director. Director Lee testified to being present at some of the meetings, but could not remember which particular ones, and whether he knew of the commission does not appear; he was not asked the direct question. Some other stockholders knew about it. Mrs. Morris, a shareholder, testified that it was generally understood that a commission was to be paid. Two or three shareholders testified that they did not know it. There is no evidence that the fact was concealed. The price to be paid was believed at the time to be no greater than the value of the land for the purposes of the scheme proposed, and there is no evidence of any misrepresentation as to value by either plaintiff or Blood, Jr.; nearly all of the subscribers were familiar with the property, and all of them had means of ascertaining its value, and the evidence discloses no facts indicating fraud in the transaction. All the shareholders knew there was to be a mortgage given for one half of the purchase price.

Mr. Hoffman, one of the directors, testified: "About the time of this purchase, values were, anywhere, very much inflated. The market was very active, and the expectation of gain from these investments was very high. At the time I subscribed to

purchase this property on the basis of one hundred and five thousand dollars, I thought I was going to make some money out of it, or I should not have invested." Mr. McDuffie, a shareholder, testified: "Large expectations were entertained at that time with reference to the coming value of property situated along this coast, and adapted to country residence purposes, and there was a great speculation indulged in upon the basis of those expectations at that time. In my mind the boom collapsed really before the beginning of the year 1888, but the people here were not aware of it. I do not think that many of the people began to realize it had collapsed in the early part of the next year."

Whether all the shareholders knew of the commission paid Blood, Jr., is immaterial. If the directors had knowledge at the time the mortgage was authorized by them, or if the president and secretary of the corporation had such knowledge when they executed the mortgage, the corporation is chargeable with the knowledge. The rule of law seems to be, that notice to the individual shareholders is not binding upon the corporation as a collective body; but notice to its corporate agents, who have authority to represent the whole company, is notice to the corporation. (1 Morawetz on Private Corporations, secs. 540b, 540c. See cases collected in note to *Bank of Pittsburgh* v. *Whitehead*, 10 Watts, 397, in 36 Am. Dec. 186, 188–200.)

There is evidence that Blood, Jr., was authorized by plaintiff to find a purchaser for the land on the terms proposed, and had no authority as his agent beyond that. Blood, Jr., testified that when he "started to sell the property" he "had no idea of taking any interest in it as a purchaser." It was when it was found that sufficient stock was not subscribed to make up the cash payment by each subscriber paying fifty per cent of the par value of the shares, that plaintiff and Blood, Jr., became subscribers. Except in his capacity of secretary of the subsequently formed corporation, Blood, Jr., is not shown by the evidence to have been "chargeable with the high good faith exacted of all who stand in a relation of trust" towards the subscribers to the stock. They all understood the price asked for the land, and the terms of the proposed sale; they knew its value, and that Blood, Jr., was offering it on behalf of its owner, presumably as his agent, and there is much evidence tending to show that there were anticipations of profit enter-

tained generally by the investors.  The evidence justified the finding that "none of the subscribers were deceived or misled by the subscriptions of any other subscribers, or by any representations of plaintiff or Blood, Jr."  And we think there was evidence sufficient to warrant the finding that "none of the subscribers to the stock were pretended purchasers thereof, or were otherwise than *bona fide* subscribers in their own right, and none of said subscribers became such under an agreement that their shares, or the shares of any of them, were to be transferred to plaintiff, or that they, or any of them, were to be held harmless by plaintiff on account of any payments made by them for their stock."  In short, we think there is evidence to support the findings, and that they support the judgment.

We do not think the case here is governed by the principles enunciated in *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610, where the vendor was a promoter; nor in *Burbank* v. *Dennis,* 101 Cal. 90, which was an action for the recovery of secret profits.  In the case here, plaintiff was not a promoter, nor was he a trustee or director, nor did he occupy any official relation to the corporation, through which he could be said to be dealing with himself.  Although he became a stockholder, he had the right to sell his land to the corporation at the agreed price, there being no fraudulent misrepresentations in the transaction. This we understand to be held in *Densmore Oil Co.* v. *Densmore,* 63 Pa. St. 43, cited approvingly in *Burbank* v. *Dennis,* 101 Cal. 90.  Nor was Blood, Jr., the general agent of plaintiff.  He had authority to sell on the agreed terms, but he had no other authority.  Plaintiff, of course, knew that his agent was to receive a commission, but the fact was not concealed from the corporation nor from the subscribers.  In taking shares, not only did Blood, Jr., assist in effecting the purchase desired by all the investors, but he became liable in common with them for any indebtedness of the corporation.  In point of fact, he never received any commissions, as the venture turned out.  In the absence of fraud or fraudulent concealment, the corporation was not prejudiced by Blood, Jr., paying his proportion of the cash payment with his commission.  The evidence justifies the finding that Blood, Jr., was not the agent of the subscribers, and did not act as such in obtaining subscribers, except to communicate to plaintiff some proposed modification of the terms of sale, and in the payment to plaintiff of a portion of the purchase-money by direction of the subscribers.

Appellant's briefs cover a wide range, but much of the discussion relates to principles as applicable to a state of facts assumed to be shown, but found, we think on sufficient evidence, against appellant. It is believed that sufficient has been said to fairly meet the essential points in the case. Some errors of law are assigned as having been committed at the trial, but we find in them nothing prejudicial to appellant.

It is advised that the judgment and order be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.