[S. F. No. 8040.   In Bank.—June 1, 1919.]

FOWLER GAS COMPANY (a Corporation), Respondent,
v. THE FIRST NATIONAL BANK OF FOWLER (a
Corporation), et al., Defendants; THE FIRST NA-
TIONAL BANK OF FOWLER, Appellant.

[1] BANKS AND BANKING — ACTION TO RECOVER AMOUNT OF DRAFT —
AUTHORITY OF BANK TO PAY—ERRONEOUS EXCLUSION OF EVIDENCE.
In this action by a corporation bank depositor to recover the
amount of a draft drawn on a partnership, but paid by the bank
out of plaintiff's deposit, the trial court erred in not permitting
the bank to show that plaintiff authorized the transaction in order
to pay the partnership for certain material.

[2] ID.—AUTHORITY FOR PAYMENT—EVIDENCE.—In such action, the
minutes of the board of directors of the plaintiff did not constitute
the only evidence admissible for the purpose of showing authority
for the payment of the sum by the bank out of the plaintiff's funds.

[3] ID.—OSTENSIBLE AUTHORITY OF CORPORATION OFFICERS—RIGHTS OF
THIRD PERSONS.—If a corporation allows its officers to conduct
its business and third persons act upon the apparent authority thus
shown, it cannot defeat the rights of such persons arising from
transactions done and completed under such ostensible authority
by failing to enter upon its minutes any order giving its officers
authority to act.

APPEAL from a judgment of the Superior Court of
Fresno County. George E. Church, Judge. Reversed.

The facts are stated in the opinion of the court.

L. L. Cory for Appellant.

Gallaher & Aten for Respondent.

SHAW, J.—Judgment was rendered in the court below in
favor of the plaintiff against the First National Bank of
Fowler and A. A. Weber, for $3,897.84. The defendant First
National Bank of Fowler alone appeals.

The complaint alleges that the plaintiff had money on de-
posit in its name in said bank and that, without authority
from the plaintiff and against its will, and with intent to de-
fraud the plaintiff, said bank, on December 5, 1913, paid out
of the said deposit a certain sum of $3,897.84, in satisfaction

of a draft for that sum, which draft said bank had previously received and honored and then held; that plaintiff was not then, or at any time, indebted to said bank or to any or either of the defendants, and that Weber received said money from the bank with knowledge of said facts and of said fraudulent intent.

The answer of the bank alleges that said draft "was honored and paid with the full knowledge and consent of said plaintiff and with its authority," and that it was not paid to Weber, but was paid to Smith-Booth-Usher Co., the drawers thereof. It further avers that on December 5, 1913, there was deposited in said bank in the name of the plaintiff the sum of fourteen thousand dollars; that on said day the plaintiff authorized and directed the bank to pay from said deposit all drafts, orders, and vouchers bearing the O. K. of the defendant Weber. That said Weber had attached his O. K. to said draft and that thereupon with said authority defendant paid the draft from said deposit.

The court below made findings sustaining the allegations of the complaint, except as to the alleged fraudulent intent. It is contended by the appellant that the finding to the effect that the payment of $3,897.84 by the bank out of the deposit account of the plaintiff therein was unauthorized is contrary to the evidence, and also that by reason of the adverse rulings of the court the appellant was prevented from fully proving the facts which constituted its defense, and was thereby deprived of its right to a fair trial. [1] Upon a careful examination of the record we are of the opinion that these points are well taken.

The draft which it is claimed was satisfied by the alleged payment reads as follows:

"Los Angeles, California, Nov. 25, 1913.

"At sight pay to the order of the First National Bank of Fowler ($3897.84) Three thousand eight hundred ninety-seven and 84/100—Dollars.

"Value received and charge to the account of

"SMITH–BOOTH–USHER CO.

"E. H. LAW.

"To Mess. Weber & Wilson,
    "Dinuba, Cal."

The evidence shows that Weber & Wilson had purchased a lot of pipe suitable for gas-mains from Smith-Booth-Usher

Co. for $4,097.84, of which two hundred dollars had been paid, that said pipe had been shipped to the town of Fowler, consigned to Weber & Wilson, and that this draft was drawn for the purpose of obtaining payment of the balance due therefor.   It is to be noted that there is nothing on the face of the draft to indicate that the Fowler Gas Company was in any way concerned with its payment.   The business of Weber & Wilson was done by Weber alone and we will use his name in referring to it.

At the outset of the trial the court was of the opinion that the authority of the bank to pay the draft aforesaid out of said deposit could not be shown, except by proof of an acceptance thereof in writing by said company.   Efforts of the appellant to show transactions between Weber and the Gas Company tending to establish the liability of the Gas Company for the debt represented by the draft were thwarted by rulings based on this ground.   This, of course, was erroneous.   The court was also of the opinion that no authority for the payment of the $3,897.84 out of the plaintiff's account could be shown except by orders to that effect entered on the minutes of its board of directors.   Other evidence to prove the authority was excluded by rulings to that effect. Later, after the trial had been postponed for a period of six months, the appellant again endeavored to show the transaction which it contended warranted the charge of this sum against the account of the plaintiff and offered evidence of the dealings between Weber and the Gas Company for that purpose.   Weber testified: ''I had a contract and erected the plant,'' but the court would not allow him to state what the contract was nor with whom it was made.   After much difficulty and over repeated interruptions and objections, some of the facts concerning the deal were elicited, the court stating in explanation that the evidence was admitted tentatively only, subject to a motion to strike out the same in case the matter was not connected by proper legal evidence of the authority from the Gas Company.   In this way the appellant introduced such scraps of evidence as the record contains on the subject.   From the remarks of the court in making its rulings it is reasonably certain that its final decision was made in entire disregard of this evidence.   The plaintiff, however, was careful to make no motion to strike

out any of it, and we have no express ruling of the court declaring it immaterial.

From the uncontradicted evidence introduced, the following facts appear: About September 1, 1913, Weber began preparing for the construction of the gas-works and distributing system in Fowler, apparently with the expectation of interesting other persons therein before its completion. On November 18, 1913, the plaintiff corporation was organized for the purpose, among other things, of acquiring and operating gas-works and conducting its principal business in Fowler. At that time Weber had the gas plant partially constructed. About that time he ordered the pipe aforesaid from Smith-Booth-Usher Co., to be used in the laying of mains for the said gas plant. Negotiations ensued between the organizers and directors of the Company and Weber, the nature of which was not allowed to be shown, for the purchase by said company of the said plant from Weber. The court refused to allow the complete terms of the contract finally made to be given in evidence, but by persistent effort the appellant finally succeeded in eliciting from Weber testimony to the effect that he sold the plant to the plaintiff and agreed to complete the same in consideration of fifteen thousand shares of the capital stock of the Gas Company of the par value of one dollar each, and fourteen thousand dollars in money; that the money was all paid and that the $3,897.84 paid by the bank in satisfaction of the aforesaid draft was a part of the said cash payment of fourteen thousand dollars; that he agreed to complete the plant for said price and turn it over to the company; that he did complete it and turned it over to the company on February 25, 1914. It also appeared that on December 5, 1913, the Gas Company deposited in the bank said sum of fourteen thousand dollars; that on the same day the bank officials entered a charge against said account for $10,565.02; that this charge consisted of $5,594 on account of a check made by the Gas Company to pay a note of Weber to the bank for money borrowed by him in September, 1913, the item of $3,897.84 on account of the draft in controversy; another item of $457.93 for freight paid by the bank at Weber's request, on the pipe above mentioned, and twenty-four other small items which had been paid on Weber's account by the bank, either on that day or previously, making the total amount above stated. All of these

charges, except the note, were approved by Weber. None of them was objected to at the time, though known to Patton, the secretary of the plaintiff. The terms of the contract of sale by Weber to the company of the gas plant, so far as they may have related to the purpose of the fourteen thousand dollar deposit, were not given in evidence other than as above stated; the defendants apparently were deterred by the adverse rulings from pursuing the inquiry. But the evidence as a whole raised a strong inference that the fourteen thousand dollars deposited in the bank by the Gas Company on December 5, 1913, represented the purchase price to be paid in cash to Weber for the sale and final completion of the plant and that it was deposited in that manner in order to make sure that it should be applied and used as far as it would go, or as far as necessary if it were more than enough, in the payment of bills then already incurred by Weber in the construction of the plant, including the $10,565.02 aforesaid, and the balance to the further expenses of Weber in completing the plant. There was no contradiction of the facts above stated, nor of the facts which, as we have said, raised the aforesaid inference.

It may be that from these facts alone the inferences just mentioned would not of necessity follow. But there was other evidence, also undisputed, which establishes them as facts proven. The pipe for which the $3,897.84 was due was at Fowler, ready for laying in the distributing system of the plant at the time the deal was closed. The officers of the company knew this, and the company agreed to pay the bills for freight thereon, and did pay them by directing a charge therefor against the fourteen thousand dollars deposit. They knew that the pipe was intended for use in the plant and also that it was so used. In February, 1914, a settlement for the construction work was made by Weber with Patton, secretary of plaintiff and also assistant cashier of the bank, and Avenall, a director of the plaintiff and also cashier of the bank. The plant was accepted and Weber paid plaintiff $322.01, ascertained to be due from him on said settlement. At that time the charge of $10,565.02 against the fourteen thousand dollar deposit, which charge included the sum of $3,897.84 paid for the pipe, was standing on the books of the bank, uncontested. If it had not been credited to the plaintiff in the settlement, Weber would not have owed

the $322.01, but plaintiff would have owed him $3,575.83. Weber's testimony that the entire fourteen thousand dollars had been paid to him stands uncontradicted, and it is clear that it was not paid in any other manner than by the charges to the Gas Company against its deposit. Furthermore, in May, 1914, in an application to the Railroad Commission for leave to issue bonds, the Gas Company declared that the cost of the pipe laid for its mains was $4,097.84 and that it had paid for the same. This could be none other than the pipe bought by Weber from Smith-Booth-Usher Co., and the payment was obviously made in the manner above stated and not otherwise. The charge made on December 5, 1913, by the bank, of this item of $3,897.84 against plaintiff, was not objected to at all until April, 1914, on the occasion of a change in the position of manager of plaintiff. J. R. Lovely testified that he then became manager, that as such he got a statement from the bank and found the draft of Smith-Booth-Usher Co. returned by the bank as a voucher for $3,897.84, charged against the company, and that he then investigated the bank account, as he said, "for the simple reason that I knew there was never no such stuff bought by the Fowler Gas Company." That the pipe was bought by the company when it bought the plant of Weber was a fact incontrovertibly established by the evidence. His reason merely showed his ignorance of previous transactions and implies that if he had known that the pipe had been bought of Smith-Booth-Usher Co. by Weber, that the draft was for the price thereof, that the pipe had been used in the plant and had been paid for as a part of the price to Weber for the plant, he would not have made the objection.

From all this evidence there can be no other conclusion than that the cost of this pipe was included in the price paid to Weber by the deposit of the fourteen thousand dollars in the bank, and its subsequent application to the bills due for construction and material, and that the charge and payment complained of was in that manner authorized by the plaintiff. The findings should have been against the plaintiff on this vital issue.

The rebuttal evidence of plaintiff was confined to an effort to show that at the meeting of December 5, 1913, the directors of plaintiff did not direct the bank to pay this draft out of plaintiff's account or to pay for any shipment of pipe out of

said account. There was a sharp conflict of evidence on these points. But the pipe was then delivered at Fowler, the draft, so far as Smith-Booth-Usher Co. was concerned, had been paid by the bank at Weber's request, and the matter was then in the shape of an item on the "Teller's Cash Ledger," of the bank. There was no occasion for any special discussion regarding that item. It was not denied by anyone that Weber was to have the equivalent of fourteen thousand dollars for the completed plant, including the pipe, nor that he got it only in the manner we have stated. It is suggested, rather than claimed, by the plaintiff that compensation to Weber for the pipe included in the transfer of the plant to the plaintiff was covered by the payment of the five thousand five hundred dollar note charged against the plaintiff's deposit. If there is evidence of this fact, the plaintiff will be at liberty to produce it upon a new trial. There is none in the record before us.

It is unnecessary to consider in detail the many adverse rulings made by the court during the progress of the trial. The issues presented the question whether the charge of the amount of this draft against the account of the plaintiff was authorized. This opened a wide field of inquiry and justified the introduction of evidence of any transactions between Weber and the Gas Company tending to show that the Gas Company assumed the payment of the debt and provided for its payment in the manner above stated. The action of the court in preventing the introduction of the evidence except in the limited manner above stated was erroneous. [2] For the guidance of the court upon a new trial we will say further that it is not true that the minutes of the board of directors of the plaintiff constituted the only evidence admissible for the purpose of showing authority for the payment of this sum by the bank out of the plaintiff's funds. [3] If a corporation allows its officers to conduct its business and third persons act upon the apparent authority thus shown, it cannot defeat the rights of such persons arising from transactions done and completed under such ostensible authority by failing to enter upon its minutes any order giving its officers authority to act. (*Fresno St. R. Co.* v. *Southern Pac. R. Co.,* 135 Cal. 208, [67 Pac. 773]; *Blood* v. *La Serena L. Co.,* 134 Cal. 370, [66 Pac. 317]; *Crowley* v. *Genesee M. Co.,* 55 Cal. 276.) If minutes are not kept, other parties have the right to prove what actually occurred at the meet-

ings of the directors, if such proof tends to establish their rights. We are of the opinion that a new trial is necessary, at which the appellant may be allowed fully to present the evidence under the rules we have stated.

The judgment is reversed.

Lawlor, J., Olney, J., Melvin, J., and Angellotti, C. J., concurred.