[S. F. No. 15356.   In Bank.—May 21, 1936.]

JOHN H. ROBERTSON et al., Respondents, v. E. A. HARTMAN et al., Appellants.

Shelton, Gray & MacWilliams, Miller & Ellis and W. A. Alderson for Appellants.

Sterling Carr for Respondents.

410

THE COURT.—In this action to quiet title to certain lands in San Mateo County, the plaintiffs had judgment and the defendants appealed.

The common source of the titles claimed by the parties is the Capuchino Golf Corporation, which acquired a tract of land for the purpose of laying out a golf course and subdividing and selling the land adjacent thereto for residential purposes. The corporation engaged the defendant Stansbury Contracting Company to make extensive improvements on the property, for which it became indebted to the contracting company in a large sum for materials and labor, and for money advanced. The contracting company was demanding payment, whereupon the golf corporation agreed to execute promissory notes aggregating $102,626.88, and, as security therefor, a second trust deed on its interest in said property. On May 26, 1928, the president of the golf corporation issued a call for a special meeting of its board of directors, to be held on May 31st at 10 o'clock A. M. at the office of the corporation, and certified that on said 26th day of May he had served a true copy of the call on "each of the directors of the Capuchino Golf Corporation". On May 31st three directors of the golf corporation met at the time and place appointed and adopted a resolution authorizing the corporation to execute said notes and trust deed. Under date of June 1, 1928, the corporation, by its president and secretary, with the corporate seal attached, executed the notes and the trust deed. These instruments were delivered to the contracting company, accompanied by a copy of a resolution of the board of directors of the golf corporation, certified by its secretary to be a correct copy and to have been "unanimously carried" by said board, authorizing the execution and delivery of said notes and trust deed to the contracting company. The trust deed was recorded on June 4, 1928.

Default in the payment of the notes was duly declared by the assignee of the contracting company, the defendant E. A. Hartman, and under proceedings admittedly regular, the trustee sold said land and executed its deed conveying title to said assignee as the purchaser.

Under date of September 24, 1928, the golf corporation executed and delivered a deed conveying to the plaintiffs herein eight lots. These lots were included in the property

covered by the trust deed to the contracting company. The plaintiffs claim through that deed, recorded on November 1, 1928, which was about five months after the trust deed was recorded. They commenced this action on June 12, 1930, which was subsequent to the trustee's deed to Hartman.

The conclusion of the trial court that the defendants' claim of title was invalid was based on its finding that the action of the board of directors of May 31, 1928, and the execution of the notes and trust deed pursuant thereto, were unauthorized and void because the meeting purported to have been held on that date was in fact no meeting of the board of directors and was illegally held.

Practically the sole question on this appeal is whether there is support in fact and in law for the foregoing finding and conclusion. The facts in the record which are claimed to be sufficient support for the finding are the following:

Capuchino Golf Corporation was organized in May, 1926. The articles of incorporation provided for a board of five directors and named the five directors who were to serve for the first year and until the election and qualification of their successors. The same five persons were shown by the articles of incorporation to have been the only subscribers to the capital stock of the corporation to the extent of one share each.

The first meeting of the stockholders of the corporation was held on May 10, 1926. At that meeting the stockholders adopted a code of by-laws which provided for a board of five directors to be elected annually and serve for one year and until their successors should be elected and qualified. The stockholders in meeting elected themselves as the directors for the ensuing year and until their successors should be elected and qualified. This election therefore conformed to the provision of the articles of incorporation, naming the same five men to act as directors for the first year.

On June 1, 1926, the stockholders held a special meeting, at which a resolution was adopted changing the number of directors from five to nine. A certificate to that effect was filed in the office of the Secretary of State on June 16, 1926. But, although the above action was taken, no actual change in the number of the members who served as a board of directors was ever effected. The same personnel, with the exception of the substitution of J. B. Rogers for a director who

had resigned, constituted the board of directors during all of the period herein mentioned. The corporation continued to function, as from the first, with a board of five directors, and executed contracts of purchase and sale of lands and deeds, and borrowed money, and generally so carried on its business with no notice taken even by itself of the proceeding initiated but never completed to increase the number of directors from five to nine.

The minutes of the directors' meeting of May 31, 1928, showed that three directors, including Rogers, were present and voted in favor of the resolution of that date authorizing the execution of the notes and trust deed here involved, and that two directors were absent. It is the contention of the plaintiff that the action taken by only three directors, when proceedings had been taken to increase the number of directors to nine, forms sufficient support for the finding of the court that the action of the board was unauthorized and of no effect.

We are, however, unable to find any support for the position taken by the plaintiff or for the conclusion of the trial court. The board of five directors named in the articles of incorporation and elected at the first meeting of the stockholders constituted, with the one exception noted, the same board which on May 31, 1928, acted on the matter of the corporation's indebtedness to the contracting company. There does not appear to have been any other meeting of the stockholders at which directors were elected held prior to that date. Those directors were duly elected to act as such and constituted the proper board of directors until the election and qualification of their successors. (*Kinard* v. *Ward,* 21 Cal. App. 92 [130 Pac. 1194].)

Furthermore, if the action of the directors was irregular for the reasons stated by the plaintiff, it was an act which was not void, but at the most voidable at the behest of the corporation or its stockholders. Neither the corporation, its stockholders, nor any party to the trust deed, sought to avoid the force or effect of the transaction. In such a case the deed of trust must stand as the validly authorized act of the corporation. (*Wood Estate Co.* v. *Chanslor,* 209 Cal. 241 [286 Pac. 1001] ; *First National Finance Corp.* v. *Five-O Drilling Co.,* 209 Cal. 569 [289 Pac. 844] ; *Blood* v. *La Serena L. & W. Co.,* 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252] ; Id., 134 Cal.

361 [66 Pac. 317].)   We must conclude that the finding and judgment of the trial court are without support in the record.

No other facts presented are sufficient upon which to base a finding for the plaintiff or an affirmance of the judgment.   The trial court made no specific finding as to when the defendant Hartman became the owner and holder of the notes and trust deed.   Stansbury testified that his corporation sold and assigned them to Hartman on March 1, 1929, which was before the maturity of the first note.   There was documentary evidence that Hartman became the owner on December 9, 1929, which was subsequent to the maturity date of the first note and the default under the trust deed.   Assuming that Hartman was not a holder in due course, that fact would subject him to any defenses which the maker might · have had against the payee, but, as indicated by the preceding discussion and conclusion, would not of itself lay him open to the plaintiffs' attack based upon the claimed irregularity in the authority of the officers of the corporation to execute the notes and trust deed.

As justification for the judgment the plaintiffs also rely upon the fact that about $4,000 of the indebtedness secured by the trust deed was originally incurred in favor of director Rogers.   It is asserted that Rogers was therefore an interested party and, as he was a necessary member of a quorum of the board, his participation in the meeting rendered the transaction irregular.   It is contended that the necessary participation of an interested director renders the resolution and any act pursuant thereto voidable, relying on *Graves* v. *Mono Lake H. Min. Co.*, 81 Cal. 303, 320 [22 Pac. 665].   The correctness of the principle stated in that case is not questioned or disputed.   But the records of the golf corporation show that its indebtedness to Rogers was acquired by the contracting company before the meeting of May 31, 1928, when the resolution authorizing the execution of the notes and trust deed, was passed.   Furthermore, it is also a necessary factor that some act of avoidance or disaffirmance by the corporation or its stockholders must have been made before the claimed ineffectiveness of the attempted authorization is established.   (*New Blue Point Min. Co.* v. *Weissbein*, 198 Cal. 261 [244 Pac. 325, 45 A. L. R. 781], and cases hereinabove cited.)   As hereinbefore noted, no such action was taken before the rights of the defendants under the trust

deed culminated in a transfer at the trustee's sale duly held pursuant to the provisions of the deed of trust. In accordance with the principles stated in the cases cited, it is now too late to question the validity of the defendant Hartman's title deraigned through the trustee's deed.

The judgment is reversed.