[Civ. No. 4738.   Second Appellate District, Division Two.—December 12, 1927.]

CAPITOL WOOLEN COMPANY (a Corporation), Appellant, v. J. BERGER, etc., et al., Defendants; A. D. HUGHES, Respondent.

Isaac Pacht, Clore Warne and Michael Rudolph for Appellant.

Daniel Beecher for Respondent.

PEAIRS, J., *pro tem.*—This is an appeal by the plaintiff the Capitol Woolen Company, a corporation, of New York, from a judgment in the above-entitled action in which the plaintiff was granted a judgment in its favor against the defendant J. Berger, doing business under the firm name and style of Model Cloak Manufacturing Company, for $346.78, together with costs, and a judgment against them in favor of defendant and cross-complainant A. D. Hughes for the sum of $350. The facts as alleged were that the said Berger, doing business as stated, was indebted to the plaintiff appellant herein, in the sum of $696.78 and that one Bernard Aftergut was the representative of the appellant, taking orders for them, and upon instructions, collecting money and arranging credits. The plaintiff states that the said Aftergut did not have authority except when special authority was given for making collections and that his orders were all subject to their approval. When the said

Aftergut called upon the defendant J. Berger for payment and for a further order, he stated in the presence of defendant Hughes, respondent herein, that unless arrangements were made to pay the whole account of $696.78 there would be no credit extended on further orders, but that if the whole indebtedness were paid or provided for he would accept his order for jersey cloth to the value of $1,200 or more, and give him sixty days' credit. After considerable discussion in the presence of and with the said A. D. Hughes, respondent, the said Hughes agreed to pay the sum of $350 on account of the past indebtedness of said Berger, to the appellant, and to indorse a trade acceptance to the amount of $346.78, the balance of the former indebtedness of the defendant Berger, provided that the appellant herein would furnish the said defendant Berger with the said jersey cloth to the extent of $1,200 or more and give him sixty days' credit, and upon that understanding and promise of the appellant to furnish the said cloth the said Hughes signed said guaranty and paid to the appellant the sum of $350. The appellant received the check for $350 and gave credit therefor and acknowledged receipt of the order for cloth as follows: "Model Cloak Mfg. Co., Los Angeles, Cal., Gentlemen: We are in receipt of order from you from our representative, Mr. Aftergut. We were all sold up on this merchandise when your order reached us, but we expect some of these goods in within the next week or ten days and' as soon as they come in, we will advise you, and you can then let us know just what you want. Trusting same is satisfactory to you and thanking you for the past favors and continuance of such, we remain, Very truly yours," but never notified the said Berger nor did they ever ship any of the order to defendant Berger. Later, upon the presentation of the draft or trade acceptance to the bank, it was not honored and the same was protested. Thereafter, the appellant brought suit against said Berger for the amount of the trade acceptance and also against the said A. D. Hughes as indorser thereon. The said Berger defaulted, but the said A. D. Hughes, respondent herein, answered, stating three defenses and further filed a cross-complaint for $350, the amount of money paid by him under the agreement with the said Aftergut, agent for the appellant. The court, after considering the evidence offered

in the case, rendered judgment as heretofore stated against the said Berger, who defaulted, for $346.78, and costs, but found no judgment against the said A. D. Hughes, and found judgment for the respondent A. D. Hughes in the sum of $350 and for his costs.

The appellant's claim is that the payment of $350 by the respondent was purely voluntary and done out of friendship for the defendant Berger, and appellant's first pleading stated that they had furnished cloth under an agreement with the said Berger and Hughes to the extent of the said $346.78, but later asked leave to amend to show that the draft or acceptance was for the balance of an old account, and that they never had agreed to furnish any cloth to the said defendant Berger through any arrangement made with the respondent Hughes. That they never received any order from the defendant Berger for jersey cloth after the time of the conversation between Aftergut and the said Hughes and that no arrangement had ever been made with the said respondent to furnish anything by reason of 'his payment of the $350 and indorsement of the draft or trade acceptance. They further alleged and attempted to prove that the said Aftergut had no authority to make any arrangement with the said defendant Berger to furnish him more cloth upon the payment of the said $350 and the guaranty or indorsement of the trade acceptance for $346.78, as aforesaid, and that he had no authority to make such promise either to defendant Berger or to the respondent Hughes. Further, the appellant alleges that the respondent was entirely a stranger to them and that his indorsement and agreement to pay the amount of $350 was because he expected to go into partnership with the said defendant Berger and that he made such payment and such indorsement purely for his own business reasons in furtherance of his plan of partnership.

From the evidence in the bill of exceptions in this case we quote from the deposition of Victor E. Meyer, a witness on behalf of the appellant, in answer to questions propounded by counsel for respondent Hughes, as follows: ''I am manager of the Capitol Woolen Company, plaintiff in this action. Up to November, 1922, I was also the president and treasurer of the company. In such official position my duties were that of supervising all the business of the cor-

poration, including making of contracts on behalf of the company, conducting and signing checks. During the month of October, 1922, I was occupying the same official position with the Capitol Woolen Company. I am familiar with the deals and transactions had with J. Berger, doing business as the Model Cloak Manufacturing Company in Los Angeles. The transactions had between me and the said J. Berger stated in full, and any communications and correspondence received by me from the said J. Berger and copies of any communications sent by me to said J. Berger are as follows: The plaintiff in this case received from the defendant, J. Berger, doing business as the Model Cloak Manufacturing Co., an order through the plaintiff's representative in Los Angeles. This order was for 10 pieces of Jersey at $1.35 per yard,—net 60 days. On June 1st, 1922, the plaintiff shipped to the said defendant, 6 pieces of the said Jersey, containing 305-4/8 yards, amounting to $412.42; on June 8th, 1922, the plaintiff shipped to the said defendant, 3 pieces of the said Jersey—containing 158-5/8 yards—amounting to $214.15; on June 12th, 1922, the plaintiff shipped to the said defendant, 1 piece of the said Jersey—containing 52 yards—amounting to $70.20; the total invoice price of these three shipments is $696.78. On October 23, 1922, the plaintiff received from the said defendant a check for $350.00 on account, which check has been paid and credited to his account. At the same time, the plaintiff received from the said defendant, a trade acceptance dated October 18, 1922, for $346.78, representing the balance of the purchase price of the said Jersey. This trade acceptance was payable in 30 days after date and was endorsed by A. D. Hughes. The action is brought to recover this. When this trade acceptance became due it was presented for payment and not paid. It was thereupon protested for non-payment. Thereafter there was some correspondence between the plaintiff and the said defendant J. Berger, and I attach the same hereto. It consists of a letter written by the said defendant to plaintiff dated September 12th, 1922; copy of a letter written by the plaintiff to the said defendant dated September 5th, 1922; copy of letter written by plaintiff to said defendant dated Sept. 18th, 1922; . . . I knew Bernard Aftergut during his lifetime. He was employed by the plaintiff in

this case, the Capitol Woolen Company, as salesman, and his territory as said representative of the plaintiff was Los Angeles and San Francisco, California. His duties consisted of soliciting orders for the plaintiff, which orders were subject to the plaintiff's acceptance and approval. He worked on a commission basis. No order for the shipment of any merchandise was received by us from J. Berger subsequent to the receipt of said trade acceptance; the plaintiff received from the said Bernard Aftergut a memorandum of an order which the defendant, Berger, wished to place with the plaintiff . . . The plaintiff received check for $350.00 to be credited on the account of the defendant, J. Berger, but I do not remember the details of the said account. . . . The plaintiff received the trade acceptance dated October 18, 1922, sued on in this action, through Bernard Aftergut. The trade acceptance and check were received in an envelope with just a memorandum written in pencil 'Enclosed please find check and trade acceptance for the account of J. Berger & Co.' B. Aftergut took up the collection of accounts and claims for the plaintiff when specifically requested to do so and not otherwise. His employment by the plaintiff consisted of the solicitation of orders subject to the acceptance and approval of the plaintiff and not otherwise.'' From the testimony of Mr. Hughes we quote the following: ''Mr. Aftergut had taken an order for merchandise and at the same time he took an order for certain amount of merchandise, he took the check and trade acceptance and went out with them with the understanding that Berger was to get merchandise. . . . An order was given at the time by Mr. Berger to Mr. Aftergut for the shipment of twenty pieces of merchandise, a variety of cloths. The understanding was that the merchandise would be shipped at once. Of course, it was on the receipt of that merchandise that the whole thing hinged. With reference to the payment of that new order of merchandise, it was said that Berger was to have regular terms on it —60 days to pay for it. I have stated in substance all the conversation that took place at that time. I had no business relations whatever with Berger at this time. . . . I was at his place of business on the 18th day of October when Mr. Aftergut came in. I was there before he came in. On this particular day I just dropped in there as I

had before to see what was going on. I don't recall any particular appointment to meet Mr. Aftergut and Mr. Berger. After I was there I agreed to pay the $350.00 and to guarantee the trade acceptance which was executed at that time. Before I paid this $350.00 nothing was said by me with reference to completing any association with Mr. Berger. . . . It is not correct that I was going into business with him and that part of the consideration of allowing me to get in on it was the paying off of these obligations. Nothing to that effect, or in substance, was ever discussed by us at any time. There was no other agreement or arrangement of any kind between us with reference to the payment of the $350.00 except just the fact that I thought he would pay it back to me. I never wrote to Capitol Woolen Company or communicated with them in any way demanding that this merchandise be shipped.''

From the evidence quoted it is clear that there had been an arrangement between A. D. Hughes, respondent, and Bernard Aftergut. It is also clear that Mr. Aftergut was in the employ of the appellant and that at the time the $350 was paid by respondent, there was an order given to Mr. Aftergut which was received by the appellant at the same time that they received the check for $350 and trade acceptance for $446.78. The letter of the appellant acknowledging the receipt of the order from the Model Cloak Company, through their representative, Mr. Aftergut, is set out herein and it is not denied that it was written by the appellant. Whatever the understanding may have been between the respondent and Mr. Aftergut, it certainly could not have been that the appellant did not intend to sell any further goods to the defendant Berger. Had the respondent advanced $350 in cash and indorsed an acceptance or draft for the amount stated, the same to be credited on a new order, if the order were never shipped the respondent certainly would have been entitled to his money back. The argument by appellant outside of that concerning the reasons for payment on the part of the respondent is that there was no privity between respondent and appellant arising out of the contract or otherwise by reason of which he would have a right to recover the $350 paid for defendant Berger, and that their representative, Mr. Aftergut, had no authority to make any settlement or ar-

rangement with either defendant Berger or respondent Hughes, but the appellant accepted the money paid under his arrangement with the respondent and defendant Berger and acknowledged the receipt of an order through Mr. Aftergut, their representative.

The trial court found judgment as stated heretofore for the respondent in the sum of $350 and gave judgment to the appellant against defendant Berger in the sum of $346.78 and costs. Under the pleadings the appellant only sued for the sum of $346.78 and in conformity with their action the trial court could not allow them judgment for any greater sum and, further, the appellant not having furnished any goods in accordance with its agreement with respondent when he paid them the $350 and indorsed the acceptance or draft, could not expect respondent to honor the draft which he had indorsed for the purpose of obtaining further goods for the defendant Berger and sixty days' credit allowance.

In *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 462, it is said: "Mr. Justice Hosmer observes, in the same case: 'More than a century ago, the case of *Rex* v. *Biggs* (3 P. Wms. [Eng.] 419) went the full length of deciding that, as against a corporation, an authority to its agents different from the prescriptions of its charter might be implied. . . . ' 'I consider it undoubted law,' continues Mr. Justice Hosmer, in the same case, 'that a corporation may incur a liability different from the prescription of its charter. Like individuals, it is responsible in the manner in which it permits its agents to hold it out to the world. The corporation should disavow the practice or usage of its agents in the transaction of business, or they shall be presumed to have its sanction. . . . ' It may be implied, from the acquiescence in the usual mode of transacting the business of the corporation and expressing no objection to it. . . . The rule in regard to estoppel is thus correctly laid down by Judge Parsons, in his work on Contracts (Vol. 1, p. 118). 'In general, if a person not duly authorized make a contract on behalf of a corporation, and the corporation take and hold the benefit derived from such contract, it is estopped from denying the authority of the agent.' In *Selma and Tenn. R. R. Co.* v. *Tipton* (5 Ala. 808 [39 Am. Dec. 344]), it is held that 'not only estoppels, technically so

called, but estoppels *in pais*, operate both for and against corporations.' . . . 'Matter *in pais*, as I understand the phrase, is where some admission has been made—or some act done or acquiesced in—or some party permitted an act to be done for his benefit, knowing the fact, without objection,—or has failed to speak out when he ought to have done so, and by reason of the same another party has been induced to part with some advantage, or, in some respect, to change his position.' "

In *Davis* v. *Pacific Studios Corp.*, 84 Cal. App. 611 [258 Pac. 440], it is said: "It is the policy of the law and the endeavor of the courts to hold corporations as well as natural persons to their contracts. Such defense introduced against a contract which has been executed in whole or in part by the corporation is looked upon with disfavor. . . . Authority of the corporation may be shown by evidence that the person does business for the corporation and on its behalf as agent with the knowledge and acquiescence of its directors or by their direction. The corporation in such case is bound by its acts and declarations within the scope of the business intrusted to him. . . . *Eells* v. *Gray Bros. etc. Co.*, 13 Cal. App. 33 [108 Pac. 735], holds that if a corporation clothes its officers or agent with apparent authority to act for it in a particular matter, it will be estopped to deny such authority as against persons dealing with such officer or agent in good faith and in ignorance of any limitations on his authority (see, also, *Fowler Gas Co.* v. *First Nat. Bank*, 189 Cal. 471 [181 Pac. 663] . . . )."

■ The judgment against the appellant in favor of respondent A. D. Hughes was given on the cross-complaint of the said Hughes, and it is from this portion of the judgment that the appellant seeks relief. The opinion of the court thus far would indicate an affirmation of the judgment of the trial court, but we have been unable to find anywhere in the evidence that there was brought home to the appellant at the time that they accepted the check of respondent for $350, any knowledge of the fact that the check was paid upon the promise of their agent Aftergut, or that they had any reason to believe that the check was anything other than one which had been paid for defendant Berger by someone owing him, or who was willing to pay Berger's debts and look to him for payment. The mere

fact that they had received the check and an indorsed acceptance which wiped out the former indebtedness of the Model Clothing Company was only in accordance with the instruction which they had given their agent and does not in itself prove that the agent Aftergut had any authority to make any promise or arrangement with anyone outside of a customer of the appellant, the Model Clothing Company, as represented by Mr. Berger—in fact the respondent in his own testimony volunteered the statement as follows: "No arrangement was made between me and Berger whereby he was to repay that amount to me that I advanced at that time. Nothing was said at that time about me getting my money back, no more than I felt quite sure Mr. Berger, if he got on his feet, would reimburse me for what I had paid out to help him get his merchandise. . . . I got pretty well acquainted with Berger, and I knew that if he got on his feet—if he got this merchandise it would put him on his feet and he would take care of me . . . ''

It would therefore appear that the respondent, in addition to not bringing home to the appellant the understanding under which he advanced the $350, shows by his own testimony that he was looking to defendant Berger for reimbursement, and therefore he should not have had judgment in his favor in that regard. We coincide with the lower court in its judgment rendered under the complaint, and the same is affirmed, but in view of the above statement, the judgment under the cross-complaint is reversed.

Works, P. J., and Craig, J., concurred.