[Civ. No. 6003. First Appellate District, Division One.—January 31, 1928.]

CHARLES ELLET, Respondent, v. LOS ALTOS COUNTRY CLUB PROPERTIES INC. (a Corporation), Appellant.

Mervyn R. Dowd and Charles Reagh for Appellant.

Rea & Caldwell for Respondent.

PARKER, J., *pro tem.*—This is an action to recover upon a promissory note. The case was tried by the court, sitting with a jury, and after a verdict in favor of plaintiff judgment was entered accordingly. Defendant's motion for a new trial was denied. From the judgment so entered this appeal is taken.

Issue was joined on the complaint of plaintiff and the answer and cross-complaint of defendant. It is conceded that the allegations of the cross-complaint are not material on this appeal, and, therefore, we omit further reference thereto and consider the case on the issues joined by the complaint and answer.

The note sued upon was signed "The Los Altos Country Club Properties Inc., L. G. Monroe, Pres., Lawrence F. Miller, Treas.," and bore the seal of the corporation and was made payable to plaintiff herein.

Defendant corporation contended in the court below, and likewise contends here, that as far as it was concerned there was no consideration for the execution of the note, or at best a consideration which failed, and that therefore the verdict and judgment are against the evidence and contrary to law.

The controversy centers about the purchase of certain lands in Santa Clara County. Much evidence was received, and a detail thereof is here unnecessary. The record before us contains sufficient evidence to support what we will outline as the facts, disregarding entirely any conflict which may exist.

Certain real estate brokers, who will be hereinafter referred to as "brokers" (which designation, if not technically accurate, will suffice for identification), had secured an option to purchase these lands. By the terms of the option the time was limited and prompt action was necessary. The plaintiff Ellet was a banker and real estate agent in Mayfield, and he entered into the transaction through an arrangement with the brokers whereby he was to secure some person with the necessary cash to carry through the option, and in return for his success he was to receive a share of the profits realized. Plaintiff Ellet placed the properties before one L. J. Monroe, and the latter becoming interested, took the matter to one L. J. Miller, and the negotiations began. Ellet agreed to give Monroe half of whatever might be received through the Ellet agreement with the brokers. The negotiations finally reached a stage where Monroe and Miller entered into a syndicate agreement, Monroe putting $75,000 in cash into the enterprise, and the brokers were to negotiate a loan or otherwise secure the balance of the purchase price, namely, $225,000. As a part of this arrangement the brokers turned over to Monroe and one Smith (the latter furnishing $25,000 under the agreement to purchase) the option held by them. It was further agreed between the parties that the brokers should have the exclusive selling agency in the property purchased, and also fifty per cent of all profits realized, it being the purpose of the entire transaction to subdivide the property into lots and tracts. Following the execution of this instrument the brokers gave to Ellet, plaintiff herein, their written promise and agreement to pay to him a percentage approximating one-third of the profits realized by the brokers. It appears that nothing further was done under the so-called syndicate agreement, and it is doubtful if the same was ever fully executed by all of the parties thereto. In any event, the option held by the brokers was not transferred. The events surrounding the syndicate agreement do evidence the stage of nego-

tiations reached. Subsequently Monroe and Miller, together with one Dailey, entered into another agreement with the brokers, by the terms whereof the brokers convey and assign all their right, title and interest in the option to Miller, Monroe and Dailey, who agree to form a corporation under the name of Los Altos Country Club Properties Inc., for the purpose of purchasing and subdividing and selling the property under option. The former agreement with the brokers as to the profits from the enterprise and the giving to them the exclusive selling agency was reaffirmed, and the brokers, as a consideration therefor, were still charged with the obligation of raising the necessary funds to complete the purchase. The corporation, being the defendant herein, was formed with Monroe as president, Miller as treasurer, and Dailey secretary, in which offices each continued up to the time of this action. Monroe and Miller owned fifty-two per cent of the stock of the corporation.

It appearing that the brokers were unable to complete their undertaking to finance the purchase of the property a final agreement was made, whereby the brokers assigned to a firm composed of Monroe and Miller all of their rights in the premises, including the exclusive selling agency and rights to profits, for the sum of $11,250, thus completely eliminating the brokers from the transaction. At the time of this agreement, in which the corporation, through its officers and attorneys, participated, a general discussion arose concerning the rights of the plaintiff herein, Ellet. All seemed to agree that Ellet had some claim that he might assert, though the corporation, then the holder of the option, did not consider anything due him. However, upon the insistence of the brokers and as a part of the transaction the corporation did make and execute and deliver to the brokers a written undertaking as follows: ''The Los Altos Country Club Properties Inc. hereby agree to hold you safe and harmless from any and all claims Messrs. A. B. Smith and Charles Ellet may have against you for any contemplated percentages due them as a result of your favorably negotiating a loan of $125,000.00 or any part thereof.'' The brokers accepted this as an indemnity against any and all claims of Ellet, and such was the intention of the agreement. The plaintiff Ellet was not a party to any of these negotiations or the agreements resulting therefrom. There-

after Ellet, learning that the option had been transferred and the brokers compensated, demanded of Monroe that he, Ellet, be compensated. Ellet, Monroe, and Miller then undertook to determine the amount due Ellet. Ellet claimed a sum equal to one-third the amount paid the brokers, which one-third amounted to $3,750. Much discussion was had, and Ellet threatened to withdraw from the controversy and begin suit against the corporation. Thereupon Monroe and Miller, to avoid litigation and by way of compromise, agreed to pay Ellet the sum of $1,875, and as an evidence of the indebtedness Monroe as president and Miller as treasurer of the corporation executed and delivered to Ellet the note sued upon here, no part of which has been paid.

The foregoing details the main facts of the controversy. There are some additional facts and circumstances, minor in themselves, indicating the general idea that the purpose of the formation of the corporation and its conduct was solely for the purpose of handling the option and the lands involved.

From this recital the prominent indisputable facts standing out in bold relief indicate clearly the following: That the corporation was created solely pursuant to an agreement with the brokers and as a part of the consideration involving the transfer of their interests; that plaintiff was in privity with the brokers and with the corporation's organizers and a party in interest; that the interest of plaintiff was recognized by all concerned, and all undertook and agreed to compensate him; that when the corporation took over the lands pursuant to the option the plaintiff Ellet had a claim against the corporation, even conceding that the corporation might have maintained a valid defense thereto; that by way of adjustment of that claim the corporation, through its president and treasurer, officers authorized to act for the corporation, executed and delivered the note in question under the corporate seal. And beyond this there are facts from which a fair inference might have been drawn by the jury that the directors and attorney for the corporation knew of and authorized the transaction.

On this state of the record appellant contends that the evidence is insufficient to justify the verdict or to uphold the judgment in that the corporation received no con-

sideration, and that Monroe and Miller had no authority to execute a corporate note.

It is the policy of the law and the endeavor of courts to hold corporations as well as natural persons to their contracts. Such defense introduced against a contract which has been executed in whole or in part by the corporation is looked upon with disfavor. ■ Authority of the corporation may be shown by evidence that the person does business for the corporation and on its behalf as agent with the knowledge and acquiescence of its directors or by their direction (*Davis* v. *Pacific Studio Corporation,* 84 Cal. App. 611 [258 Pac. 440]; *Blood* v. *La Serena Land etc. Co.,* 134 Cal. 361 [66 Pac. 317]; *Commercial S. Co.* v. *Modesto Drug Co.,* 43 Cal. App. 162 [184 Pac. 964]). Like individuals a corporation is responsible for the manner in which it permits its agents to hold it out to the world (*San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 462). ■ In Parsons on Contracts (vol. I, page 118) we find: "In general if a person not duly authorized makes a contract in behalf of a corporation, and the corporation take and hold the benefit derived from such contract, it is estopped from denying the authority of the agent." And that this is the recognized law of to-day is affirmed in *Capitol Woolen Co.* v. *Berger,* 87 Cal. App. 500 [262 Pac. 351], decided December 12, 1927.

As is said in *Sargent* v. *Palace Cafe Co.,* 175 Cal. 737 [167 Pac. 146]: "In the matter of consideration as well as that of corporate power the court will equitably look through the mere form to the reality of the transaction."

The law of this jurisdiction is announced in the case of *Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 211 [155 Pac. 986], as follows: "And upon a proper showing that the Abbott Kinney Co., a corporation, was but the instrumentality through which Abbott Kinney for convenience transacted his business, by all of the authorities not only equity, looking through the form to substance, but the law itself, would hold such a corporation bound as the owner of the corporation might be bound, or conversely, hold the owner bound by the acts which bound his corporation.

The rule in its strictness is necessarily limited. Courts may not disregard the corporate entity in all cases, and destroy the usefulness or identity of private corporations as

such. The rule is as announced in the following cases: *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 Pac. 641]; *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]; *Hotaling* v. *Hotaling,* 193 Cal. 380 [224 Pac. 455]; *Wenban Estate* v. *Hewlett,* 193 Cal. 696 [227 Pac. 723].

▇ Generally, and without provision for exceptional cases, the rule is that in order to cast aside the legal fiction of distinct corporate existence it must appear that they are the business conduit and *alter ego* of one another, and that to recognize their separate entities would aid the consummation of a wrong.

We would not attempt to enlarge upon this rule or to go beyond its limitations. Nevertheless, the spirit of the rule is to permit the fullest inquiry in each individual case, and when it is disclosed that injustice would result or fraud be perpetrated courts are not powerless to sift through mere form and determine the actual conditions. And, consistent with the rule and the spirit thereof, the corporate entity may be recognized and respected and yet be bound by acts of its representatives upon an implication resulting from facts and circumstances which in themselves might not go to the extent of establishing a positive and direct authorization.

In the case at bar there was but an equivocal showing of lack of authority or nonreceipt of benefits. The testimony offered in defense was evasive and uncertain, and the defense urged technical in character. We thus characterize the testimony not entirely by way of condemnation, but accepting defendant's own estimate of it.

We conclude the evidence amply sufficient to support the verdict and judgment.

▇ Appellant next urges misconduct of counsel for plaintiff.

We have carefully examined the record in this respect. While it is true that there was at the trial some discussion and reference that might well have been omitted, yet the proceedings below were conducted without prejudice to the rights of either party in this respect. Necessarily in every trial, from time to time, side remarks and allusions creep in, and it would be impossible to prevent this. Unless, upon a review of the particular case, something grossly offending appears, it is idle to bring up this ground of complaint.

The third ground of appeal concerns certain instructions given by the court. We deem it needless to set out in detail all of the instructions complained of. The result would be simply the building up of a theory merely for the purpose of destruction. There is nothing in the contention that involves any new or interesting problem of law such as would establish any doctrine needful to the practice or instruction of the profession or of assistance to trial courts. On the whole the jury were fairly and fully instructed; and while we might and do concede that the language employed in certain instructions was perhaps ill chosen, and perhaps to some extent inapplicable, yet no injury could have resulted therefrom.

We may state, however, that it is always a dangerous practice for trial judges to comment even indirectly upon the evidence, or to even inferentially stress the testimony of any witness or witnesses. It is not error for the trial court to state to the jury that certain testimony has been given in the case, provided it states the same with accuracy and not in a manner to mislead the jury. (*Bruce* v. *Western Pipe & Steel Co.*, 177 Cal. 25 [169 Pac. 660].) It is, however, a delicate task and one that should be carefully approached.

Though it may appear on close analysis that the action of the trial court in the matter of giving and refusing instructions is subject to some of the criticism offered by the appellant, yet a study of the record makes it manifest that any errors appearing could not have materially prejudiced the rights of appellant or seriously affected the outcome of the trial. In other words, we conclude that substantial and even justice resulted irrespective of the errors, and that a trial free from such errors would have the same result. Therefore we are content to leave the judgment undisturbed (Const., sec. 4½, art. VI).

Lastly, appellant complains of the action of the trial court in refusing to submit proposed special issues to the jury. In the brief of appellant it is not disclosed just what issues were offered. We have, however, examined the record in this connection, and can find nothing in the court's action requiring the intervention of this court. The general verdict sufficiently covered the issues and answered the pleadings. Some of the special issues offered were

clearly issues of law and were misleading. A separate finding on each of the issues offered would have added nothing, and the special issues presented were confusing, and so phrased that nothing but doubt and uncertainty could have resulted from their submission to the jury. In any event, it was a matter clearly within the discretion of the trial judge, and nothing appears to indicate that the discretion in this instance was abused.

Judgment affirmed.

Cashin, J., and Knight, Acting P. J., concurred.