[Civ. No. 6343. First Appellate District, Division One.—October 8, 1928.]

M. E. BURNS, Respondent, v. THE VALLEY BANK (a Corporation), Appellant.

Carl E. Lindsay and Lindsay & Gearhart for Appellant.

Youngworth, McClean & Hartman and Harry J. McClean for Respondent.

PARKER, J., *pro tem.*—This action was brought in the court below by the respondent as assignee of Leo V. Youngworth, attorney at law, to recover the sum of fifteen hundred dollars for legal services alleged to have been rendered the defendants at their special instance and request between January 1, 1924, and February 8th of the same year. At the trial the action was dismissed as to the defendant W. D. Mitchell, and the case proceeded as against Valley Bank, appellant. Judgment was entered in favor of plaintiff and against defendant Valley Bank for the full amount prayed. A motion for a new trial was made and denied, and the present appeal is from the judgment.

The only question presented is as to whether the appellant Valley Bank employed Mr. Youngworth to render the services performed by him. Appellant makes no contention as to the rendering of the services, or that their value was not as found, but insists that the services were not rendered to the appellant.

A brief synopsis of the facts becomes necessary to illustrate the contentions made.

In January, 1924, the Valley Bank was a corporation duly engaged in the business of general banking pursuant to the laws of this state. W. D. Mitchell was the president of the bank, duly elected as such and in actual discharge

of the general duties pertaining to his office. The by-laws of the corporation provided: "The president shall take charge of the moneys, funds and other property of the corporation and be the acting managing agent of the corporation, subject at all times to the by-laws and orders of the board of directors." Likewise the by-laws of the corporation provided: "The board of directors shall appoint from their number an executive committee constituted of five members, including the president, for the transaction of such business of the corporation as may require their attention between the meetings of the board of directors of this corporation; and all business transacted by such committee shall be submitted to and be approved by the board of directors at their next regular meeting if required; and this committee shall constitute a standing committee of the corporation, a majority of which may sit in the absence of the regular or special meeting of the committee and have the power and authority herein conferred by the board of directors."

In the latter part of September, 1923, it developed that a certain banking institution in the city of Bakersfield, which will hereinafter be referred to as the Bakersfield Bank, had become indebted to the Valley Bank in a large sum of money. This sum is fixed at something between sixty thousand and ninety thousand dollars. This loan was of doubtful collectibility, and it is agreed herein that the chances of recovery thereof were quite speculative and doubtful to an extreme. The president of the bank, Mitchell, with the full knowledge and approval of the executive committee, employed one T. S. Saunders, whose position was termed "Confidential Secretary to the President of Valley Bank," and whose duties embraced an investigation of the account and of the solvency and business management of the Bakersfield Bank. The primary purpose apparent in the employment of Saunders was to work out the destiny of the Bakersfield Bank with the motive of recovering for the Valley Bank the sums loaned, it being obvious that a failure or insolvency of the Bakersfield institution would involve a heavy loss upon the Valley Bank. Accordingly Saunders set about the work. It is unnecessary to detail the various steps in his investigation or the reports and suggestions following. The fact was that the

fear concerning the recovery of the loan was not without foundation. For a time it was planned that possibly the Valley Bank might take over the Bakersfield Bank. However, in the course of rehabilitation it developed that certain interests in Los Angeles were seeking a bank opening in Bakersfield. Thereupon Saunders, in the employ of the Valley Bank and under directions from Mitchell and the executive committee, undertook the working out of the details incident to a sale of the Bakersfield Bank. Saunders was instructed and authorized to employ counsel in this regard, the counsel not being designated but to be some Los Angeles attorney. Accordingly Saunders employed Mr. Youngworth, and the latter performed all legal services necessary to carry out the sale. As a result of the sale the Bakersfield Bank was put upon a sound footing, and a part of the agreement was that the indebtedness due the Valley Bank should be paid and discharged. Here it may be observed that the written evidences of the transaction do not contain this agreement; nevertheless the direct testimony offered does support this statement. It appears also from the record before us that some of the directors of Valley Bank owned a majority of the stock of the Bakersfield Bank, and that the sale of the latter institution necessarily was of direct benefit to these directors. It does not appear that Mitchell, president, owned any Bakersfield stock; the contrary is the fact. It is not in evidence just how many of the directors were thus interested. There is evidence sufficient to support the conclusion that the board of directors knew of the entire transaction, the employment of Saunders and the directions given him. There is direct evidence that while the negotiations with the prospective purchasers of the Bakersfield Bank were yet unfinished the board of directors decided to cancel the employment and disavow the obligation of Saunders' salary; that Saunders, upon being notified of this act, told the directors to go ahead and finish the work themselves; whereupon the board informally reconvened and then instructed Saunders to proceed and he would be paid. Saunders, pursuant to his instructions, as mentioned, employed Mr. Youngworth to assist in the legal details, and the latter performed services stipulated to be reasonably worth the sum claimed.

■ The contention of appellant here is that the president has no authority, express or implied, to engage an attorney; that the services rendered were for the benefit of the directors as individuals, and that if it should be held that appellant is in error in these contentions, then finally it is urged that the whole transaction was *ultra vires* as concerns the corporation, and as to it no liability could arise therefrom. In support of the first argument appellant relies upon two California cases, viz., *Pacific Bank* v. *Stone*, 121 Cal. 202 [53 Pac. 634], and *Campbell* v. *Hanford*, 67 Cal. App. 155 [227 Pac. 234].

A careful analysis of these cases will disclose that they do not support appellant in its conclusions here. In each of them the background of fact differed entirely from that presented here. The facts of the instant case bring it well within all of the exceptions mentioned in the decided cases. There is ample evidence in the record to show that the president of the Valley Bank had general authority to direct and manage the affairs of the bank; that the executive committee was a standing committee of the board of directors to transact such business of the corporation as might require their attention between meetings of the directors; that the directors themselves, both personally and as a body, ratified and approved the action taken, and likewise the fact that the transaction recovered and restored to the bank a large sum of money, the recovery of which may reasonably be said to have been doubtful in the absence of this action. This showing brings the case well within such authorities as those cited, and the judgment of the court below is supported by the following cases: *Bartlett Estate Co.* v. *Fraser*, 11 Cal. App. 373 [105 Pac. 130]; *Countryman* v. *California Trona Co.*, 35 Cal. App. 728 [170 Pac. 1069]; *Brown* v. *Crown Gold Mining Co.*, 150 Cal. 376, 387 [89 Pac. 86]; *Jan Wai* v. *Smith Riddell Co.*, 55 Cal. App. 59 [202 Pac. 952]; *Ellet* v. *Los Altos Club Properties, Inc.*, 88 Cal. App. 740 [264 Pac. 270]; *Capitol Woolen Co.* v. *Berger*, 87 Cal. App. 500 [262 Pac. 351]. A further citation of authority is needless.

■ It is next contended that because a majority of the Bakersfield Bank stock was owned by directors of the Valley Bank the employment of Saunders and Youngworth was by the directors personally and for their benefit.

The record does not disclose that a majority, or even a comparatively large number of directors were interested. It does show that the president had not the slightest personal interest. The argument of appellant in this connection would in any event show a complete knowledge by the directors, and both an authorization and ratification. Further, if all of the directors were interested stockholders in Bakersfield Bank, and had permitted the funds of Valley Bank to be loaned without security or collateral of any sort, it would make more compelling their duty to the Valley Bank to have those funds recovered. ▨ The fact that the moneys of the Valley Bank had been loaned contrary to law, or that a liability might be fastened upon the directors individually, would not lessen the interest that the Valley Bank itself had in the recovery of the funds. First and foremost was the Valley Bank's duty to its depositors; and because some of the directors may have technically assumed a double position this duty was not shifted.

Lastly appellant contends that inasmuch as the entire transaction was one whereby the Valley Bank purchased shares of another banking corporation contrary to the provisions of the Bank Act, then it was an *ultra vires* and void contract. This contention is based upon an hypothesis wherein the major premise is unfounded. The argument is supposititious and proceeds thus: "*If* the transaction was one whereby the Valley Bank was purchasing the stock of Bakersfield Bank, etc." Nothing in the record before us justifies the supposition.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.