[Sac. No. 4052. In Bank.—April 1, 1930.]

THE WOOD ESTATE COMPANY (a Corporation), Plaintiff, Cross-Defendant and Respondent, v. FLORA LEE CHANSLOR et al., Defendants, Cross-Complainants and Appellants; PLUMAS GRASS VALLEY MINES COMPANY (a Corporation) et al., Cross-Defendants and Respondents.

F. H. Dam for Appellants.

L. H. Hughes, Thomas P. Boyd, William B. Crocker and H. W. B. Taylor for Respondents.

WASTE, C. J.—The defendants have prosecuted this appeal from a judgment quieting the plaintiff's title to certain mining property situate in the county of Plumas. Plaintiff and defendants claim title from the same source, to wit, from the Plumas Grass Valley Mines Company, hereinafter referred to as the Mining Company. Plaintiff-respondent derived its title by virtue of a sale and conveyance under a trust deed executed by the Mining Company. Defendants-appellants claim title by virtue of a sale to them on an execution issued on a money judgment recovered by them against the Mining Company in an action for damages for personal injuries. ▮ The facts show that the trust deed through which the respondent deraigns title was delivered by the Mining Company to the respondent The Wood Estate Company, together with a contemporaneous chattel mortgage, to secure a prior indebtedness of the Mining Company to The Wood Estate Company and its predecessors in the sum of $39,500, evidenced by a promissory note in that sum. The promissory note was executed and delivered at the same time the trust deed and chattel mortgage were delivered, under circumstances hereinafter pointed out. The trust deed, chattel mortgage and promissory note above mentioned antedated by two days the judgment executed upon by appellants, and upon which their title depends, although the action in which said judgment was entered had been commenced seven months prior thereto. Recordation of the trust deed and chattel mortgage occurred after rendition and entry of appellants' judgment, but while execution thereon was being stayed at the instance of the judgment debtor, the Mining Company. The appellants had not recorded an abstract of the judgment at the time the trust deed was recorded, and had not, therefore, acquired a prior lien under section 674 of the Code of Civil Procedure. This trust deed and chattel mortgage running to respondent, The Wood Estate Company, served to charge all of the property of the Mining Company with the payment of the indebtedness owing to respondent.

From the above facts it appears that both in point of time of execution and time of recordation the lien upon which respondent relies antedated the lien of appellants.

Appellants contend that the lien upon which they rely is entitled to priority, and that therefore the judgment quieting title in respondent should be reversed. Appellants attack the judgment on three main grounds, to wit:

1. That the trust deed through which the respondent received title was executed and delivered without any consideration therefor having passed to the Mining Company, and was executed and delivered with the fraudulent intent and purpose of precluding the appellants from realizing on any judgment they might thereafter procure in their action for personal injuries then pending against the Mining Company.

2. That this court should disregard the fiction of the distinct corporate existence of the Mining Company, and treat the acts complained of as the acts of The Wood Estate Company, on the theory that the Mining Company was "in reality but the *alter ego* of The Wood Estate Company," or, at most, the *alter ego* of the Wood Estate Company and Buel, manager of the Mining Company.

3. That Buel and the secretary of the Mining Company had no authority from the Mining Company to execute the trust deed, for the reason that the resolution authorizing its execution was passed at an improperly and illegally assembled meeting of the board of directors of the Mining Company.

The contention of appellants that the trust deed was executed and delivered without consideration, and with the fraudulent intent of defeating appellants' probable judgment is amply refuted by the findings of the trial court as supported by the evidence. There is an abundance of evidence tending to show that during his lifetime E. K. Wood, deceased, had loaned to the Mining Company sums of money totaling $17,000, and that subsequent to his death, and at various times up to March 9, 1918 (the date the trust deed was executed), E. K. Wood's estate, The Wood Estate Company, had advanced and loaned to the Mining Company further sums aggregating $22,500, totaling $39,500. It is true that there is a conflict in the evidence on this point, but, under elementary rules, that conflict must be determined in favor of respondent on this

appeal. It very definitely appears, therefore, that the Mining Company, the trustor, was indebted to The Wood Estate Company, the beneficiary, in the sum of $39,500 for actual cash advanced and used by the Mining Company in carrying on its business, when on March 9, 1918, in response to numerous requests of its creditor for security, it executed its note in the above-mentioned amount, and delivered its trust deed as security therefor. The record discloses that the respondent, The Wood Estate Company, bought in the property at the trustee's sale for $40,000, and so credited the Mining Company's account. This evidence, accepted by the trial court as reflecting the true situation, adequately disposes of the appellants' contentions that the trust deed was without consideration and executed with the fraudulent design of preventing appellants from collecting on any judgment they might thereafter procure in their action against the Mining Company.

Appellants' contention that the Mining Company was "in reality but the *alter ego* of The Wood Estate Company," or the *alter ego* of The Wood Estate Company and Buel, does not merit a very serious consideration. We feel that the evidence in this case falls far short of that necessary to permit this court to disregard the fiction of separate corporate existence. It is quite true that the respondent,. The Wood Estate Company, was the owner of considerably over half the stock of the Mining Company, and it is also very likely that, as such majority stockholder, it controlled its policies. But these facts, standing alone, can avail appellants but little. The law is well settled that, in order to cast aside the legal fiction of a distinct corporate existence, it must appear that the corporation is the business conduit and *alter ego* of its stockholders, and that to recognize it as a separate entity would aid in the consummation of a wrong. In other words, not only must it appear that one man or two men own the stock and control the policies, but it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person or persons has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under

the circumstances, sanction a fraud or promote injustice. (*Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 Pac. 673]; *Erkenbrecher* v. *Grant,* 187 Cal. 7, 11 [200 Pac. 641]; *Ellet* v. *Los Altos Country Club Properties,* 88 Cal. App. 740, 746 [264 Pac. 270].) The court below, on ample evidence, found against appellants on the issue of bad faith. The record before us does not warrant a disregard of the corporate entity.

■ The strongest attack made upon the validity of the trust deed by appellants is that the resolution authorizing its execution was not passed at a "duly assembled" meeting of the board of directors of the Mining Company. The facts upon which appellants predicate this contention are as follows: The by-laws of the Mining Company provide that each director shall, at the first meeting after his election, cause to be entered in the minutes his address, to which all notices may be directed until similar notice and entry of change of residence has by him been given in writing. Notice of special meetings of the board of directors, the by-laws also provide, shall be given by leaving a written or printed notice at the last known place of business or residence of each director. It is the duty of the secretary to serve all notices required by law or the by-laws of the company. One of the directors of the Mining Company [Chamberlain] did not attend the meeting at which the resolution of authorization was passed, and neither received, nor waived, notice of its calling, nor consented in writing to its being held. The trial court found that all of the directors of the Mining Company had been elected on or about April 24, 1916, and "that on or about said date last named P. G. Chamberlain [the non-attending director], one of said directors, did not give his place of residence or his business address to the secretary of the corporation, nor has he at any time since given to said secretary, his residence or his business address; and that shortly after said date last named said Chamberlain disappeared, and his whereabouts became unknown and particularly to the secretary of said corporation and that at the time said meeting of said board of directors was had, said secretary did not have, nor for a long time prior thereto had not had or had not known, the place of residence or business address of said Chamber-

lain. The court further finds that divers meetings of said board of directors were held between the date of the organization of said corporation Plumas Grass Valley Mines Company and said 9th day of March, 1918, and that said P. G. Chamberlain did not attend any one of said meetings." Appellants therefore contend that since one director was absent and not duly notified of the special meeting, as required by section 320 of the Civil Code, and in no way waived notice as required by section 320a of the Civil Code, the meeting of the board of directors was improperly and illegally assembled, and that therefore the resolution authorizing the trust deed was of no legal effect and could not confer authority on the officers therein designated to execute and deliver the instrument. Appellants rely on the general principle enunciated in such cases as *Relley* v. *Campbell,* 134 Cal. 175 [66 Pac. 220]; *Curtin* v. *Salmon River etc. Co.,* 130 Cal. 347 [80 Am. St. Rep. 132, 62 Pac. 552]; *Richman* v. *Bank of Perris,* 73 Cal. App. 321 [238 Pac. 754]; *Richman* v. *Bank of Perris,* 102 Cal. App. 71 [282 Pac. 801], and others to the effect that a special meeting of the board of directors held without the requisite notice is void, and directors present thereat cannot perform any valid corporate act. Assuming, for the purpose of this opinion, but not deciding, that under the circumstances here presented the resolution of March 8, 1918, conferred no authority on Buel and the secretary to execute the trust deed, it does not follow that under the facts of this case the trust deed is not binding on the Mining Company. Both appellants and respondent have failed to emphasize certain facts which to this court seem decisive of the issues presented. The trial court made the following finding: "That on or about the 3rd day of October, 1916, one J. F. Buel was the vice-president and manager of said Mines Company and had full control of all of the operations and business of said mining company, and was at all times held out to the world by said mining company as its general manager and business agent. That said J. F. Buel, in his capacity of vice-president and manager of said mining company, represented to E. K. Wood, since deceased, that said mining company was in need of large sums of money with

which to prosecute and bring to completion the work of developing certain mining properties and securing therefrom auriferous gravels in profitable quantities, and also to secure by purchase or lease additional mining properties, and that if said E. K. Wood would loan said mining company money to use for such purposes, said mining company would give to said E. K. Wood its note in payment thereof, and would secure the payment of said note by the execution of a deed of trust upon all its real property and a chattel mortgage on all its personal property. That said E. K. Wood did accept said proposition, and did loan to said mining company to the full sum of $17,000.00. That on the 27th day of July, 1917, and before the work of developing said mine was completed, said E. K. Wood died testate; and thereafter, after proceedings for that purpose had, Frederick J. Wood was appointed one of the executors of the last will and testament of said decedent, and that such executor became entitled to the possession of said indebtedness and the right to collect the same from said mining company. That said Frederick J. Wood, as such executor, agreed with said J. F. Buel as the manager of said corporation, to make further advances of money to said mining company for the purpose aforementioned, in consideration of the promise of said Buel, in behalf of said corporation, that said corporation would execute a note to cover all of the amounts theretofore loaned to it by said decedent E. K. Wood and such further advances as might be made by said executor out of the funds of said E. K. Wood estate, and would secure the payment of said note by the execution of a deed of trust conveying said real property and a chattel mortgage on its personal property to such trustees or persons as said Frederick J. Wood might name; and that, in consideration of said promise of said mining corporation and relying thereon, said Frederick J. Wood, out of the funds of said estate, did advance and pay to said mining corporation, the further sum of $22,500.00, making in all the aggregate sum of $39,500.00 received by said mining company from said E. K. Wood, and said Frederick J. Wood, as executor of the last will and testament of said E. K. Wood, deceased.

"That thereupon, on the 9th day of March, 1918, said mining company, in fulfillment of its said promise, executed the deed of trust mentioned in the cross-complaint on file herein, to-wit: that certain deed of trust dated the 9th day of March, 1918, made and executed by Plumas Grass Valley Mines Company, a corporation, party of the first part, to C. A. Thayer and H. W. B. Taylor, parties of the second part (trustees), and W. T. Wood and F. J. Wood, parties of the third part, which said deed of trust was thereafter on the 12th day of March, 1918, duly recorded in the office of the County Recorder of the County of Plumas, State of California, in Volume 17 of Mortgages, at page 267, and which deed of trust was given to secure the payment of a certain promissory note for the sum of $39,500.00 of even date with said deed of trust executed by said mining corporation to said W. T. Wood and F. J. Wood; and that said deed of trust was executed to the persons above named and they took and held the same, for the uses and benefit of said E. K. Wood Estate."

Thus it clearly appears from the findings that Buel was the general manager and business agent of the corporation, and was held out by the corporation as such. It further appears that as far back as October 3, 1916, this business agent represented to E. K. Wood that if he, the said E. K. Wood, would advance certain moneys to the Mining Company, it, the Mining Company, would issue its promissory note, secured by a trust deed and chattel mortgage on all the Mining Company's property. It is obvious that, under the provisions of sections 2309 and 1624, subdivision 5, of the Civil Code, the authority of Buel to make such an agreement would have to be in writing—that is, evidenced by a resolution of the board of directors passed at a meeting duly assembled. The facts show that this precedent authority was never conferred. But, in reliance on the representations of Buel, E. K. Wood advanced to the Mining Company the sum of $17,000, and respondent, The Wood Estate Company, also in reliance thereon, advanced a further sum of $22,500. Thus the total sum of $39,500 had been advanced by E. K. Wood or his estate to the Mining Company in reliance on Buel's promises and representations before March 9, 1918, the date Buel executed the trust deed. All of this money

was received by the Mining Company with knowledge of the promise of its general manager and used by the corporation to carry on its activities. In fact, the evidence shows the Mining Company could probably not have continued in existence had not this money been advanced.

It would be clear, under well-settled doctrine, that if Buel had executed the trust deed without precedent authority on October 3, 1916, the Mining Company would be estopped to deny his authority in so doing. But here the trust deed was executed March 9, 1918, by Buel and the secretary after the moneys had been advanced in reliance on his promise that such a trust deed would be executed by the Mining Company. Assuming that the resolution of March 8, 1918, was legally insufficient to constitute either a ratification of Buel's promise or to confer authority on Buel to execute the trust deed (because one director was absent, as pointed out *supra*), this court can see no legal difference between a situation where the trust deed is issued when the promise is made and a situation as is here presented, where, in reliance on the promise, the money is advanced, and then the trust deed is executed by the agent in a good-faith attempt to carry out the promise.

On the authority of the principle discussed above, we therefore hold that the Mining Company is estopped to deny Buel's authority in executing the trust deed, regardless of the validity of the resolution conferring that authority upon him. ■ It is too elementary to need citation of authority that if the corporation is estopped, in absence of fraud, the estoppel likewise applies against the creditors of the corporation. This is so because the creditors get only the rights of the debtor, and no more. (10 Cal. Jur. 652.)

■ It should also be pointed out that the two parties to the trust deed—i. e., the Mining Company and respondent—are not seeking to avoid the instrument, but, in fact, both are seeking to uphold it. Appellants' objection is that the authority of the agent must be in writing under our statute of frauds. Just how a third party to such a contract can attack it, when the two principals do not object, is not made to appear. It would seem to be the rule that third parties cannot avail themselves of the defense

of the statute if the two principals acquiesce. (12 Cal. Jur. 925; 25 R. C. L. 736.)

For the foregoing reasons the judgment is affirmed.

Richards, J., Preston, J., Langdon, J., Curtis, J., Seawell, J., and Shenk, J., concurred.

Rehearing denied.