[L. A. No. 12102. In Bank.—December 28, 1932.]

HOLLYWOOD CLEANING & PRESSING CO. (a Corporation), Appellant, v. HOLLYWOOD LAUNDRY SERVICE, INCORPORATED (a Corporation), Respondent.

Meserve, Mumper, Hughes & Robertson and Baldwin Robertson for Appellant.

Walter H. Hewicker and O'Melveny, Tuller & Myers for Respondent.

THE COURT.—Plaintiff appeals from that portion of a judgment adverse to it, rendered in an action brought by plaintiff for damages for breach of a written contract by defendant. The appeal is taken on the judgment-roll alone so that none of the evidence produced before the trial court is before us. Defendant has separately appealed from those portions of the judgment adverse to it. (See *Hollywood Cleaning & Pressing Co.* v. *Hollywood Laundry Service, Inc.* (L. A. No. 12345), *post,* p. 131 [17 Pac. (2d) 712].)

The facts giving rise to the controversy between the parties are as follows:

On April 18, 1924, plaintiff and defendant entered into a written contract by the terms of which defendant agreed that for a period of ten years it would solicit, together with its general laundry business, dry cleaning, dyeing and pressing business, and would turn over to plaintiff exclusively all the dry cleaning, dyeing and pressing business it thus acquired. Defendant agreed that all during the term of the contract it would advertise for and solicit such business in order to secure the maximum thereof. The contract provided that the drivers of defendant should pick up the cleaning, dyeing and pressing work from its customers and should deliver the same to plaintiff's plant, and should redeliver the goods to the customers after plaintiff had completed it. Plaintiff agreed to furnish special accommodations at its plant for handling the business secured by defendant. Defendant was to collect for the work, and to retain 37½ per cent thereof for itself and to remit the balance to plaintiff. There was an express provision to the effect that defendant "agrees to include in this agreement any other laundry plant that it may acquire during the continuation of this agreement, provided that any other agreement does not exist covering its dry-cleaning, dyeing and pressing business with the other laundry plant".

For a short time after the agreement was entered into both parties lived up to its terms and conditions. The court found that about January, 1925, defendant "without cause or justification breached said agreement and sent only a part of its dry-cleaning, dyeing and pressing business to the plant of plaintiff, and thereafter from on or about the 21st day of March, 1925, without cause or justification defendant failed and refused, in all respects and in every respect, to comply with the terms of said written agreement". Plaintiff elected to treat the breach by defendant as terminating the contract, and brought this action. The trial court awarded damages to plaintiff, in the amount that it found plaintiff would have made as profit had the contract been fully performed. The correctness of that award is not involved on this appeal. Defendant has perfected a separate appeal from that award. (*Post*, p. 131.) The present appeal is concerned with the following facts: The

trial court found that at the time the written contract was entered into all of the capital stock of defendant Hollywood Laundry Service, Incorporated, was owned either by Frank L. Meline, an individual, or Frank L. Meline, Inc., a corporation; that all of the capital stock of Frank L. Meline, Inc., was then owned and is still owned by Frank L. Meline; that on various dates during the period included within the contract, Frank L. Meline, Inc., acquired all the capital stock and assets of four laundry companies; that defendant Hollywood Laundry Service, Incorporated, did not cause these laundries acquired by Frank L. Meline, Inc., to turn their dry-cleaning, dyeing and pressing business over to plaintiff; that if defendant had required these newly acquired laundries to turn their dry-cleaning, dyeing and pressing business over to plaintiff during the term of this contract, plaintiff would have made a profit of approximately $10,000 from such business. However, the trial court refused to include this amount as damages for the reason that it found that "it is not true that it was intended or contemplated by the parties hereto, or that said written agreement provided, that any other laundry plants acquired by either Frank L. Meline or Frank L. Meline, Inc., during the terms of said agreement should be included in the terms of said agreement of April 18, 1924". The trial court also found that "it is further true that defendant has not acquired any laundries since the execution of said agreement".

Plaintiff has appealed solely from this portion of the judgment refusing to award damages for the failure of defendant Hollywood Laundry Service, Incorporated, to turn over to plaintiff the dry-cleaning, dyeing and pressing business of the four laundries acquired by Frank L. Meline, Inc. It is the contention of the plaintiff that under the above circumstances a situation is presented where this court should hold, as a matter of law, that the separate corporate existence of Frank L. Meline, Inc., should be disregarded and that the laundries acquired by it must be deemed to have been acquired by defendant corporation within the meaning of the contract. Plaintiff asks that this be done, even though it failed to plead or prove, so far as the findings disclose, that title was taken to the newly acquired laundries by Frank L. Meline, Inc., instead of in the name of Hollywood Laundry Service, Incorporated, with the intent

or for the purpose of evading liability under the contract. For all that appears on the record before us the corporation Frank L. Meline, Inc., acquired these laundries in good faith without any intent of assisting defendant to evade liability under the contract. No facts are pleaded or found which would indicate that to recognize the separate corporate entities of the two corporations would, under the circumstances, sanction a fraud or promote injustice. It must be remembered that this appeal is taken on the judgment-roll alone. None of the evidence introduced before the trial court is before us. ■ It is, of course, elementary that when an appeal is taken on the judgment-roll nothing can be assumed or considered that does not appear upon the face of the judgment-roll. All intendments and presumptions must be made in support of the judgment. ■ In the absence of any finding to the contrary we must conclusively assume that Frank L. Meline, Inc., acquired these laundries in good faith and without any intent of assisting defendant in evading liability under the contract. The burden of proof to show the contrary was on the plaintiff and in the absence of a record, we must necessarily assume that plaintiff failed to sustain the burden imposed upon it. Keeping these well-settled rules in mind, we can come to no other conclusion but that the judgment appealed from should be affirmed. The trial court expressly found that it was not intended or contemplated by the parties to the contract that any laundries acquired by Frank L. Meline or Frank L. Meline, Inc., should be included within the contract. Under ordinary circumstances we would have to assume that the above finding was amply supported by the evidence. However, we find in the record a stipulation between counsel representing the respective parties to the effect that "no evidence whatever was offered or received during the trial of this action touching the intention or contemplation of the parties to the contract of April 18, 1924, as to whether any other laundry plants acquired by either Frank L. Meline or Frank L. Meline, Inc., during the term of said agreement should be included within the provisions thereof". Assuming that this stipulation may be considered as properly before us (but see *Spreckels* v. *Ord*, 72 Cal. 86 [13 Pac. 158] ; *Spinetti* v. *Brignardello*, 53 Cal. 281; *People* v. *Hawes*, 41 Cal. 632; 2 Cal. Jur., p. 519, sec. 258), a question we do not find

it necessary to now decide, we fail to see how the fact that that finding is unsupported by the evidence can assist the plaintiff. The finding that defendant did not acquire any new laundries stands unimpaired. All that the record shows, even if this last-mentioned finding were to be disregarded, is that the plaintiff corporation entered into a contract with defendant, Hollywood Laundry Service, Incorporated; that all of the stock of defendant was owned either by Frank L. Meline or Frank L. Meline, Inc.; that Frank L. Meline owned all the stock of Frank L. Meline, Inc. What other stock was owned by Frank L. Meline, Inc., if any, does not appear. The contract purports to be between plaintiff and defendant alone. It does not purport to bind any other person or corporation, whatsoever. No facts are alleged or found which would indicate that to recognize the separate corporate entities of the two corporations would sanction a fraud or promote an injustice. In other words, plaintiff's contention narrows down to the contention that the separate corporate entities of the two corporations should be disregarded solely because all of the stock of defendant corporation is owned by another corporation, Frank L. Meline, Inc., or by Frank L. Meline, and that the last-named party owns all the stock of Frank L. Meline, Inc. This has never been the rule in this state. ▮▮ Whatever may be the rule in other jurisdictions, the rule is well settled in this state that the mere fact one or two individuals or corporations own all of the stock of another corporation is not of itself sufficient to cause the courts to disregard the corporate entity of the last corporation and to treat it as the *alter ego* of the individual or corporation that owns its stock. In addition it must be shown that there is such a unity of interest and ownership that the individuality of such corporation and the owner or owners of its stock has ceased; and it must further appear that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence.

In the leading case of *Erkenbrecher* v. *Grant,* 187 Cal. 7, 11 [200 Pac. 641), the rule is stated as follows:

"The finding of the trial court that the company acquired the notes because the then holder of them was pressing

plaintiff in his capacity as indorser for payment does not negative the separate entity of the company. In the absence of any dishonest motive or intention to accomplish a wrong, and, as we have said, none was proven, we fail to discover any objection whatever to plaintiff directing the company to purchase the notes. If it be assumed that he caused their purchase for the reason that it was not then convenient for him to meet his obligations as indorser, there would still be wanting the elements to which we have referred, and the presence of which we hold is essential to justify treating plaintiff and the company as identical—as a unit. In order to cast aside the legal fiction of distinct corporate existence as distinguished from those who own its capital stock, it is not enough that it is so organized and controlled and its affairs so managed as to make it 'merely an instrumentality, conduit, or adjunct' of its stockholders, but it must further appear that they are the 'business conduits and *alter ego* of one another', and that to recognize their separate entities would aid the consummation of a wrong. Divested of the essentials which we have enumerated, the mere circumstance that all of the capital stock of a corporation is owned or controlled by one or more persons, does not, and should not, destroy its separate existence; were it otherwise, few private corporations could preserve their distinct identity, which would mean the complete destruction of the primary object of their organization.''

In *Wood Estate Co.* v. *Chanslor*, 209 Cal. 241, 245 [286 Pac. 1001], it is stated: ''The law is well settled that, in order to cast aside the legal fiction of a distinct corporate existence, it must appear that the corporation is the business conduit and *alter ego* of its stockholders, and that to recognize it as a separate entity would aid in the consummation of a wrong. In other words, not only must it appear that one man or two men own the stock and control the policies, but it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person or persons has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.'' (See, also, *D. N. & E. Walter & Co.* v. *Zuckerman*, 214 Cal. 418 [6 Pac. (2d) 251, 79 A. L. R. 329]; *Minifie* v. *Rowley*, 187

Cal. 481 [202 Pac. 673]; *Llewellyn Iron Works* v. *Abbott Kinney Co.*, 172 Cal. 210 [155 Pac. 986]; *Wenban Estates, Inc.,* v. *Hewlett,* 193 Cal. 675 [227 Pac. 723]; *Ellet* v. *Los Altos Country Club Properties,* 88 Cal. App. 740 [264 Pac. 270].)

Under the principles enunciated in the above cases, and for the reasons already advanced it is obvious that on the record before us it is impossible for this court to disregard the separate existence of Frank L. Meline, Inc., and to treat it and the Hollywood Laundry Service, Incorporated, as the *alter ego* of Frank L. Meline.

For the foregoing reasons that portion of the judgment appealed from by plaintiff is hereby affirmed.

Rehearing denied.